# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3254

_____

United States of America

*Plaintiff - Appellee*

v.

Frankie Maybee

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: June 15, 2012
Filed: August 6, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Frankie Maybee was convicted on six counts related to willfully causing bodily injury to another because of that person's race, color, or national origin in violation of certain provisions of the Shepard-Byrd Hate Crimes

Prevention Act. *See* 18 U.S.C. §§ 249(a)(1), 371, 2. The district court[1] sentenced Maybee to 135 months' imprisonment. Maybee appeals his convictions and sentence, and we affirm.

## I. BACKGROUND

In the early morning hours of June 20, 2010, Frankie Maybee, Sean Popejoy, and Curtis Simer were loitering around Maybee's blue pick-up truck in the parking lot of a gas station and convenience store in Alpena, Arkansas. At approximately 1:00 a.m., Jeffrey Perez, Francisco Reyes, Brian Vital, Anthony Gomez, and Victor Sanchez arrived at the gas station in a green sedan. Vital and Sanchez fueled the sedan and entered the convenience store. When Vital and Sanchez emerged from the store, Maybee and Popejoy yelled at them, calling them "beaners" and "wetbacks" and stating, "You Mexicans need to go back to Mexico." Vital and Sanchez ignored the comments, reentered the sedan, and drove away. Popejoy slapped the trunk of the sedan as it left and continued to yell racial epithets. Vital drove the sedan westbound on Highway 412, a two-lane highway.

After the sedan left the gas station, Maybee, Popejoy, and Simer discussed following the sedan to fight with its occupants. Popejoy said, "Let's go get the fuckin' Mexicans." Maybee indicated that he wanted to "beat the shit out of them" and decided to drive after them. The Government introduced surveillance video showing the three men huddled together in the parking lot for nearly a minute after the sedan left, then driving off together in Maybee's truck with Maybee driving. While they drove, they discussed physically assaulting the men in the sedan, with Maybee stating that once he caught the "fuckin' Spics" he was "going to beat the shit out of them."

---

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

After driving several miles, Maybee caught up with the sedan, approached it with the lights of the truck off, and then flashed its bright lights several times. Maybee then drove into the opposite lane of traffic adjacent to the sedan, and Popejoy leaned out of the window and waved a tire wrench at the occupants of the sedan. Maybee rammed the sedan with his truck approximately three times, causing the rear end of the sedan to rise and buckle. Eventually, Maybee's truck struck the sedan near its left rear wheel in what Simer and Popejoy described as a "pit maneuver." Simer and Popejoy explained that such a maneuver was designed to cause the driver of the sedan to lose control, which is exactly what happened.

The sedan crossed the opposite lane of the highway, left the road, flipped over into a ravine, crashed through a fence, hit a tree, and burst into flames. During the crash, the three passengers in the backseat, Perez, Reyes, and Gomez, were ejected from the sedan. Vital and Sanchez were wearing seatbelts and remained in the sedan. All five were injured. Perez was removed to a trauma center by helicopter and suffered lacerations to his head, multiple fractures to his ribs and pelvis, punctures to both lungs, and a concussion. Reyes was removed to a trauma center by ambulance and was treated for head injuries, a fractured spine, abrasions, and contusions. Vital suffered a burn on his arm and cuts to his shoulder and head. Sanchez injured his head and knee. Gomez suffered abrasions, lacerations, and bruises.

Popejoy testified that he saw the sedan hit the tree and ignite, but no one in the truck stopped, called 911, or otherwise attempted to assist the occupants of the sedan. According to Simer, Maybee stated that he hoped the "fuckin' beaners burn and die" so that he would not get caught. Maybee also threatened Popejoy and Simer that he would kill them if they disclosed his involvement with the crash. Maybee drove the truck for several more miles before turning around to go home. The truck ran out of fuel near the crash scene, and Maybee parked the truck against a fence. Maybee then examined the truck for damage and called a friend to pick them up. The sedan was

still on fire when they drove past the crash site in the friend's vehicle. According to Simer, Maybee told everyone in the car to shut up and stay calm.

An officer with the Caroll County Sheriff's Office located Maybee's truck parked against a fence approximately one-tenth of a mile from the crash site. The officer observed fresh damage and a "green paint transfer" on the front of the truck. That same day, Maybee reported his truck missing, explaining where he had left it on Highway 412. During a subsequent interview, Maybee admitted seeing a car full of Hispanic men leave the gas station in front of him on the night in question. Maybee also admitted to inspecting his truck for damage after it ran out of gas. During the interview, an investigator asked Maybee about the crash and showed Maybee a picture of the green paint transfer on the truck. When the investigator indicated that the paint appeared to be fresh, Maybee responded: "Is that all you have? Is that the best you have to prove my truck did this?" The same investigator interviewed Simer, who initially denied involvement with the crash but ultimately informed officers of his involvement after obtaining an immunity agreement. After a grand jury indicted Maybee and Popejoy as co-conspirators and aiders and abetters in violating the Shepard-Byrd Hate Crimes Prevention Act, Popejoy pled guilty pursuant to a plea agreement to one count of conspiracy and one count of violating the Shepard-Byrd Act. Simer and Popejoy both testified at Maybee's trial.

## II.    DISCUSSION

On appeal, Maybee raises a narrow challenge to the constitutionality of 18 U.S.C. § 249(a)(1) and also challenges the sufficiency of the evidence, the district court's denial of his motion for a new trial, and his sentence. We review *de novo* questions of law, including the constitutionality of a statute. *See United States v. Louper-Morris*, 672 F.3d 539, 563 (8th Cir. 2012). The Shepard-Byrd Act makes it a crime willfully to cause bodily injury to another because of that person's "actual or perceived race, color, religion, or national origin." 18 U.S.C. § 249(a)(1). The parties agree that the constitutionality of § 249(a)(1) depends on whether it is a proper

exercise of Congress's power under Section Two of the Thirteenth Amendment "rationally to determine what are the badges and incidents of slavery" and to abolish them. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439-40 (1968). This inquiry is exemplified by our previous examination of the constitutionality of 18 U.S.C. § 245(b)(2)(B) in *United States v. Bledsoe*, 728 F.2d 1094 (8th Cir. 1984), and our sister circuits' analogous cases *United States v. Allen*, 341 F.3d 870 (9th Cir. 2003), and *United States v. Nelson*, 277 F.3d 164 (2d Cir. 2002).[2] *Bledsoe*, *Allen*, and *Nelson* each held that Congress rationally could designate as a badge and incident of slavery the willful infliction of injury on a person because of that person's race and because that person has enjoyed a public benefit. *Bledsoe*, 728 F.2d at 1097 ("[I]nterfering with a persons's use of a public park because he is black is a badge of

---

[2]We note that the phrase "badges and incidents of slavery" is a term of art. The Supreme Court explained when it coined the term that "[t]he long existence of African slavery in this country gave us very distinct notions of what it was, and what were its necessary incidents," which were compulsory service, restraint on movements, receiving severer punishment than the privileged class, and the disability to hold property, make contracts, sue in court, be a witness, and "such like burdens and incapacities." *Civil Rights Cases*, 109 U.S. 3, 22 (1883). The Court explained that the badges and incidents of slavery were analogous to the "burdens and disabilities of a servile character, incident to feudal vassalage in France," and other servitudes, inequalities, and observances which were "imposed by the old law, or by long custom which had the force of law, and [were] exacted by one man from another without the latter's consent." *Id.* at 21. The Supreme Court reaffirmed the historical meaning of the term in *Jones,* stating that "whatever else they *may have encompassed*, the badges and incidents of slavery—its 'burdens and disabilities'—*included* restraints upon 'those fundamental rights which are the essence of civil freedom, namely the same right . . . to inherit, purchase, lease, sell and convey property, as is enjoyed by white citizens.'" 392 U.S. at 441 (quoting *Civil Rights Cases*, 109 U.S. at 22) (emphases added). Thus, just like we did in *Bledsoe*, we can look to the words of the Supreme Court for guidance in evaluating Congress' exercise of its power to eliminate the "relic[s] of slavery." *See id.* at 443; *id.* at 445 (Douglas, J., concurring).

slavery." (citing *Jones*, 392 U.S. at 445 (Douglas, J., concurring))); *see also Allen*, 341 F.3d at 884; *Nelson*, 277 F.3d at 190-91.

In his brief, Maybee raises a single and quite narrow challenge to the constitutionality of § 249(a)(1). He argues that because the *Bledsoe*, *Allen*, and *Nelson* courts relied on two statutory elements—that the willful infliction of the injury be motivated both by the victim's race and by the victim's enjoyment of a public benefit—in finding a *sufficient* basis to uphold § 245(b)(2)(B), these cases held that both elements are *necessary* to justify the exercise of Congress's Thirteenth Amendment enforcement power. Maybee then observes that § 249(a)(1) does not require that the willfully inflicted injury be motivated by the victim's enjoyment of a public benefit. From this, he concludes that § 249(a)(1) is unconstitutional under *Bledsoe*, *Allen*, and *Nelson*.

Maybee provides no reason why a finding of constitutional sufficiency of a statute based on two elements establishes a precedent that both elements are necessary to avoid constitutional infirmity. *See Nelson*, 277 F.3d at 190 n.25 ("The presence of these two (narrowing) requirements in § 245(b)(2)(B) makes easier our upholding of the statute's constitutionality. . . . [W]e emphasize that we are not holding that both (and in particular the second) of the conditions are necessary to the statute's constitutionality."). While Maybee argues that § 249(a)(1) sweeps more broadly than § 245(b)(2)(b), he provides no substantial argument as to why the particular scope of § 249(a)(1) renders it constitutionally infirm. *See United States v. Stanko*, 491 F.3d 408, 415 (8th Cir. 2007) (refusing to address issues not substantively argued by a defendant). Because we find no support for Maybee's reading of *Bledsoe*, *Allen*, and *Nelson* and because Maybee raises no other substantive arguments, his narrow challenge to the constitutionality of § 249(a)(1) fails.

Maybee next challenges the sufficiency of the evidence. We review *de novo* the sufficiency of the evidence to sustain a conviction. *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007). We will affirm unless, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences that may be drawn in favor of the verdict, no reasonable jury could have found Maybee guilty. *See id.* We must affirm all of Maybee's convictions if a reasonable jury could have found beyond a reasonable doubt that he knowingly agreed to and did willfully cause bodily injury to each of the occupants of the sedan because of their "actual or perceived race, color, religion, or national origin." 18 U.S.C. §§ 249(a)(1), 371. Maybee contests the sufficiency of the evidence that he acted "because of the race or national origin" of the victims. He argues that he had an independent reason for pursuing the victims, relying on Popejoy's testimony that he told Maybee, albeit falsely, that the Hispanic men had made "an obscene gesture" toward them while in the parking lot.

We reject Maybee's argument that no reasonable jury could conclude that he forced the sedan off the highway because of the race or national origin of its occupants. Several occupants of the sedan offered uncontradicted testimony that they engaged in no aggressive or threatening behavior toward Maybee, Popejoy, and Simer that night and had never interacted with them at all previous to that occasion. Popejoy and Simer both testified that Maybee directed racial epithets at the occupants of the sedan and continued to use those epithets while discussing his plans to assault them. The jury also heard testimony that, after Maybee forced the sedan off the road and it burst into flames, he stated that he hoped the "fuckin' beaners burn and die." We must reject Maybee's challenges to the credibility of Popejoy's and Simer's testimony because a witness's credibility is for the jury to decide. *See United States v. Aldridge*, 664 F.3d 705, 715 (8th Cir. 2011). Based on this evidence, a reasonable jury could have concluded that the race or national origin of the occupants of the

sedan was "a substantial motivating factor" in Maybee's decision to pursue the sedan and force it off the highway. *See Bledsoe*, 728 F.2d at 1098.

Maybee also argues that the evidence was insufficient to show that he acted willfully, rather than recklessly, in causing the crash or that he agreed with others willfully to cause the injuries. However, the Government introduced evidence that Maybee huddled together with Simer and Popejoy at the gas station and discussed pursuing the sedan to assault its occupants. Popejoy's exhortation to "go get the fuckin' Mexicans" and Maybee's statement that he wanted to "beat the shit out of them," followed by Maybee's repeated ramming of the sedan with his truck, were sufficient to allow a jury to conclude that he agreed to, and did in fact, willfully cause the injuries. Furthermore, Popejoy testified that Maybee's final collision with the sedan near its left rear wheel was a "pit maneuver," which Popejoy and others testified is specifically designed to cause a driver to lose control of his vehicle. Because there was sufficient evidence to allow a reasonable jury to find Maybee guilty of all six counts, we reject his challenge to the sufficiency of the evidence.

Relying on similar arguments, Maybee appeals the district court's refusal to grant him a new trial. We review a denial of a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 for an abuse of discretion. *United States v. LeGrand*, 468 F.3d 1077, 1080 (8th Cir. 2006). Although the district court may weigh the evidence and disbelieve witnesses, the verdict must be allowed to stand "[u]nless the district court ultimately determines that a miscarriage of justice will occur." *United States. v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).

Maybee contends that the district court abused its discretion in refusing to grant his motion for a new trial because only Simer and Popejoy testified that he used racial epithets to refer to the victims. He argues that their testimony was not credible because they both expected to receive lenient treatment in exchange for testifying,

because Simer had lied in the past, and because Popejoy admitted to drinking preceding the crash. However, the district court considered Maybee's credibility argument and rejected it. The court concluded that the jury's "apparent belief of [the] testimony supporting the charges" was not unreasonable or suspect and that "the weight of the evidence is clearly in favor of the jury's verdict." We decline to second-guess the district court's evaluation of the witnesses' credibility. *See United States v. Gabe*, 237 F.3d 954, 961 (8th Cir. 2001).

Maybee also contends that a new trial was warranted because the Government frequently referred to photographs of the charred sedan during trial. Maybee does not contend that the district court erred in admitting the photographs as evidence, and he concedes that the Government properly referred the jury to the exhibits, arguing only that the frequency of these references "had the clear effect of inflaming the jury," which should entitle him to a new trial. However, photographs of the accident scene were relevant to how the victims received their injuries and to the jury's evaluation of the credibility of the witnesses who described the crash. Having carefully considered Maybee's arguments, we find no "clear and manifest abuse of discretion" in the district court's determination that denying Maybee a new trial would not result in a miscarriage of justice. *Id.* at 961 (quoting *United States v. Brown*, 956 F.2d 782, 786 (8th Cir. 1992)).

In addition to the issues raised above, Maybee raises an assortment of other issues for the first time on appeal, including constructive amendment of the indictment, variance of the evidence at trial from the facts alleged in the indictment, application of the federal aiding and abetting statute, and the sufficiency of the indictment. Because he raises these issues for the first time on appeal, we review them only for plain error. *See United States v. Rush-Richardson*, 574 F.3d 906, 910 (8th Cir. 2009). Here, we discern no plain error nor questions of manifest injustice. *See United States v. Ruklick*, 919 F.2d 95, 98 (8th Cir. 1990) ("Because Ruklick's

remaining arguments neither rise to the level of plain error nor present questions of manifest injustice, we do not address them in this opinion.").[3]

Finally, Maybee also raises a procedural challenge to his sentence, arguing that he was entitled to a minor role adjustment under U.S.S.G. § 3B1.2(b) because he was convicted of "aiding and abetting" and was "substantially less culpable" than Simer and Popejoy. "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." *United States v. Morales,* 445 F.3d 1081, 1085 (8th Cir. 2006) (quoting *United States v. Ramos-Torres*, 187 F.3d 909, 915 (8th Cir. 1999)). Whether Maybee played a minor role in the offense is a question of fact generally reviewed for clear error. *See United States v. Bradley*, 643 F.3d 1121, 1128 (8th Cir. 2011). Because Maybee did not raise this challenge before the district court, however, we again review only for "plain error resulting in a miscarriage of justice." *See United States v. Nichols*, 151 F.3d 850, 854 (8th Cir. 1998). In light of the extensive evidence at trial that Maybee played a central role in every aspect of the crimes, *see United States v. White*, 241 F.3d 1015, 1024 (8th Cir. 2001), we find no error, much less plain error, in the district court's failure to *sua sponte* grant Maybee a minor role adjustment.

---

[3]Maybee also contends that his trial counsel rendered ineffective assistance by failing to propose jury instructions regarding entrapment and self-defense and by failing to present character witnesses. "We will consider an ineffective assistance of counsel claim on direct appeal only in exceptional cases where the district court has developed a record on the ineffectiveness issue or where the result would otherwise be a plain miscarriage of justice." *United States v. Hernandez*, 281 F.3d 746, 749 (8th Cir. 2002) (quoting *United States v. Brown*, 183 F.3d 740, 743 (8th Cir. 1999)). Because neither exception applies here, we decline to address Maybee's ineffective assistance of counsel claims at this time.

## III.  CONCLUSION

For the foregoing reasons, we affirm.

_____