# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-1232

_____

United States of America

*Plaintiff - Appellant*

v.

Abby Rae Cole

*Defendant - Appellee*

_____

No. 11-1513

_____

United States of America

*Plaintiff - Appellee*

v.

Abby Rae Cole

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 17, 2012
Filed: August 6, 2013
_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury found Abby Rae Cole guilty of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349; tax evasion, in violation of 26 U.S.C. § 7201; and conspiracy to commit tax fraud, in violation of 18 U.S.C. § 371.  The mail and wire fraud conspiracy conviction stems from her company's theft of nearly $33 million from Best Buy over a four-year period.[1]  The tax fraud conspiracy and tax evasion convictions stem from understating tax liability by more than $3 million between 2004 and 2007 by using various schemes to conceal her company's true profitability.  Cole's advisory Guideline range was 135 to 168 months imprisonment, but the district court varied downward and sentenced her to three years probation on each count, with all terms to be served concurrently.  The government appeals Cole's sentence, arguing it is substantively unreasonable.  Cole cross-appeals, challenging her convictions.  We affirm Cole's convictions but remand her case to the district court to provide a fuller explanation of her sentence.

I.

Cole founded Chip Factory, Inc., a computer parts distributor, in 1989 and served as its owner and CEO until the company shut down in 2007.  Her husband

_____

[1]The government repeatedly characterizes the fraud as involving more than $41 million.  The district court ultimately found Cole responsible for $32,886,849.12 in restitution to Best Buy.

Russell began working at Chip Factory in the late 1990s and eventually took primary control of the company's day-to-day operations so that Cole could spend more time with their children.

Around 2002, Best Buy, a large electronics retailer, began using an automated online bidding system called the Parts Procurement Network ("PPN") to acquire computer parts. Vendors wishing to sell computer parts to Best Buy had to fill out an application and get approval to access the PPN. Best Buy would list parts that it needed on the PPN so that approved vendors could bid for the opportunity to supply the parts. Vendors would enter bid information directly into the PPN, and the PPN would automatically determine the winning vendor based on a combination of price and product availability. After the PPN determined the winning bid for a particular parts order, Best Buy would send the winning vendor an order for those parts.

Russell applied for Chip Factory to become an approved vendor to Best Buy. In the application, Russell significantly overstated Chip Factory's annual sales, number of employees, and quantity of parts on hand to ensure that Best Buy would approve the application. Best Buy did approve the application. Between 2003 and 2007, Best Buy was Chip Factory's largest customer, accounting for more than 90 percent of Chip Factory's sales.

The PPN system had a significant flaw: a winning vendor could re-enter the system and change its bid amount after receiving an order invoice. Chip Factory discovered and exploited this flaw, initially submitting low bids for parts orders to beat out other vendors, then re-entering the system and increasing its bid amount after the PPN awarded it an order, and finally invoicing Best Buy for the higher bid amount. Russell and two other Chip Factory employees bore primary responsibility for bidding through the PPN. Russell regularly sent bribes to Robert Bossany, a Best Buy employee, so that Bossany would help Chip Factory conceal the fraud.

Although Cole did not work at Chip Factory full-time while this fraud was occurring, she came to the office and worked for a couple of hours every day. Cole purchased computer parts used to fill the Best Buy orders, handled the employee payroll, and reviewed Chip Factory's monthly financial reports. Chip Factory employees testified that they occasionally prepared envelopes addressed to Bossany's home and gave them to Cole. One employee testified that he twice saw Cole put cash into such an envelope. Cole also gave baby clothes and baby furniture to Bossany. Additionally, Cole's voice can be heard in the background of several recorded phone conversations in which Russell and another Chip Factory employee were discussing the fraud against Best Buy.

Furthermore, as relevant to Cole's tax evasion and tax fraud conspiracy charges, Cole was one of the employees responsible for entering information about the cost of goods sold into Chip Factory's accounting program. Cole regularly inflated the cost data as she entered it into Chip Factory's accounting program, making it appear that Chip Factory's inventory costs were higher than they actually were. Both Cole and Russell spoke with another Chip Factory employee responsible for entering cost data and told him to likewise inflate the cost data. Cole met with Mike Hartman, a professional tax preparer, each year for tax years 2004 through 2007. Cole gave Hartman the inflated cost data to use in preparing tax returns for her and her company, but did not tell Hartman that the figures were inflated. Hartman used these inflated cost figures when preparing tax returns for Chip Factory and for Cole, which had the effect of reducing Cole's apparent tax liability by fraudulently lowering Chip Factory's income. Similarly, Cole and Russell both paid for various personal expenses through Chip Factory and then deducted the expenses as business expenses on their tax returns, which also had the effect of lowering the amount of income reported on the returns. Russell also diverted portions of Chip Factory's income directly into the Coles' personal joint bank account. Cole received the bank account statements and spent the money but never reported this income on any tax returns.

Cole signed Chip Factory's tax returns, as well as her own personal tax returns, every year for tax years 2004 through 2007.

The government brought numerous fraud, money laundering, conspiracy, and tax evasion charges against Cole. She pled not guilty, proceeded to a jury trial, and was convicted of one count of mail and wire fraud conspiracy, one count of tax fraud conspiracy, and four counts of tax evasion.

At Cole's sentencing hearing, the district court determined that Cole's advisory Guideline range was 135 to 168 months imprisonment. The district court then stated that it would vary from the Guidelines and impose a sentence of three years probation, offering the following explanation for the sentence:

> Now, the house that Best Buy built is no longer yours. I've sent your husband away for a long, long period of time. I listened to the testimony and if I felt that you were intimately involved in what was going on, you would be joining him in prison for a long period of time . . . . It would be a travesty of justice if I sent you away for a long period of time. I am taking a huge chance on you and rest assured . . . if you come back on a violation, because I am going to have the probation officer watch you closely, I will send you to prison . . . . Now go home and take care of your children.

The district court also issued a written statement of reasons in which it noted that Cole lost financial and familial stability as a result of her convictions, that Cole was "remorseful" and not likely to re-offend, and that a sentence of probation "will allow the Coles' children access to one stable, loving parent." The court characterized Cole as "mostly a passive, although legally responsible, participant in these conspiracies" who "went along with her husband's scheme and practiced willful blindness." The court also stated Cole's "sentence avoids unwarranted sentencing disparities among similarly situated defendants by providing a sentence sufficient but not greater than necessary to fulfill the § 3553(a) factors."

This appeal followed.

## II.

### A.

Cole argues that the district court erred in denying her motion for judgment of acquittal because (1) the evidence was insufficient to sustain any of her convictions and (2) the government's change of theory on tax liability constituted a material variance from the indictment.

#### 1.

"We review de novo the sufficiency of the evidence to sustain a conviction." United States v. Louper-Morris, 672 F.3d 539, 555 (8th Cir. 2012). We view the evidence in the light most favorable to the jury's verdict, drawing all reasonable inferences in favor of the verdict and reversing "only where no reasonable jury could find all the elements beyond a reasonable doubt." Id.

To sustain Cole's mail and wire fraud conspiracy conviction, the government had to prove (1) there was an agreement between two or more persons to commit mail and wire fraud, (2) Cole knew of the agreement, and (3) Cole intentionally joined in the agreement. See id. The elements of mail fraud under 18 U.S.C. § 1341 are "(1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail would be used, and (4) that the mail was used in furtherance of some essential step in the scheme." Louper-Morris, 672 F.3d at 555 (internal quotation and alteration marks omitted). The elements of wire fraud under 18 U.S.C. § 1343 are identical to the elements of mail fraud except that wire fraud involves interstate wire communications rather than mail. Louper-Morris, 672 F.3d at 555.

The government presented overwhelming evidence that Russell orchestrated a multimillion-dollar scheme to defraud Best Buy by inflating bids through the PPN system and bribing Bossany to conceal the fraud. Russell made material false representations to Best Buy with the intent to defraud when he lied about Chip Factory's qualifications to participate in the PPN program and when he systematically inflated the prices charged to Best Buy after winning contracts by using fraudulently low bids. The government presented abundant evidence that Russell, Cole, and others at Chip Factory used the mail and interstate wire communications in executing this fraud.

Cole argues that the government failed to prove she knew of and intentionally joined the mail and wire fraud conspiracy. She points to some witnesses' testimony that she was not involved in certain aspects of the fraud, and also argues that other testimony linking her to the fraud should not be believed. However, "a defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc). "Proof of a defendant's involvement in a conspiracy may of course be demonstrated by direct or circumstantial evidence." Id. Moreover, in reviewing a sufficiency-of-the-evidence challenge, "we are obliged to defer to the jury's determination of the credibility of the witnesses." Id. at 1031.

Cole is correct that much of the government's evidence concerning the mail and wire fraud conspiracy focused on Russell's role in the fraud. But the government also presented evidence that Cole worked at Chip Factory every day while the fraud against Best Buy was occurring, was present during several conversations in which Russell and another Chip Factory employee discussed the fraud, purchased the computer parts used to fill Best Buy's orders, and gave money and gifts to Bossany. Viewing this evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences in favor of the verdict, we hold this evidence is sufficient to

prove that Cole knowingly and intentionally joined in an agreement to defraud Best Buy.

To sustain Cole's conviction for tax evasion under 26 U.S.C. § 7201, the government had to prove "willfulness, the existence of a tax deficiency, and an affirmative act constituting evasion or attempted evasion of the tax." United States v. Renner, 648 F.3d 680, 688 (8th Cir. 2011) (internal quotation marks omitted). The government presented evidence that Cole regularly inflated the cost of goods sold when entering this information into Chip Factory's accounting system and then gave this inflated cost data to her tax preparer. Cole and Russell likewise directed another Chip Factory employee to record inflated cost data in the company's accounting system. Additionally, both Cole and Russell paid for personal expenses through Chip Factory, and Cole subsequently deducted those personal expenses as business expenses on her tax returns. Russell also diverted some of Chip Factory's income directly into his and his wife's joint bank account. Cole received the bank account statements and spent the money but did not properly report this income on her tax returns. The government presented evidence that as a result of all this conduct, Cole did not pay all the income tax she owed.

Viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in favor of that verdict, we hold the evidence is sufficient to prove that Cole willfully committed affirmative acts constituting tax evasion and that a tax deficiency resulted. Likewise, we hold the evidence is sufficient to sustain Cole's tax fraud conspiracy conviction since the evidence shows that Cole knowingly and intentionally entered an agreement with Russell to evade taxes, and that Cole took an overt act in furtherance of the agreement. See United States v. Murphy, 957 F.2d 550, 552 (8th Cir. 1992) ("To convict [a defendant] of conspiring to defraud the United States under 18 U.S.C. § 371, the government must show an agreement to defraud the federal government and an act by one or more of the conspirators to effect the object of the conspiracy.").

2.

Cole next argues that the district court erred in denying her motion for acquittal because there was a prejudicial variance in the evidence used on the tax evasion and tax fraud conspiracy charges. "A variance arises when the evidence presented proves facts that are materially different from those alleged in the indictment." United States v. Buchanan, 574 F.3d 554, 564 (8th Cir. 2009) (internal quotation marks omitted). We review de novo whether a variance occurred and whether that variance was prejudicial. Id. at 565.

Cole is not entitled to relief because there was no variance. The indictment alleged that Cole used several different schemes to understate her federal tax liability, and the government presented evidence on each scheme at trial. Although the government miscalculated the total amount involved in one scheme in a pretrial disclosure, no specific amount was alleged in the indictment, and the government corrected the mathematical error before presenting the information to the jury. Thus, the evidence presented at trial was not "materially different" from the facts alleged in the indictment, see id. at 564, and no variance occurred.

B.

Cole argues the district court erred in denying her motion for a new trial because (1) the verdict was against the weight of evidence and (2) the district court erred in admitting Government Exhibit 7.[2] We review a district court's denial of a motion for a new trial for abuse of discretion. United States v. Maybee, 687 F.3d 1026, 1032 (8th Cir. 2012). "Although the district court may weigh the evidence and disbelieve witnesses, the verdict must be allowed to stand unless the district court

_____

[2]Cole also argues she was entitled to a new trial due to a variance. Because we conclude no variance occurred, we reject this argument.

ultimately determines that a miscarriage of justice will occur." Id. (internal quotation marks omitted).

First, the district court did not abuse its discretion in rejecting Cole's claim that the verdict was against the weight of the evidence. As discussed above in section II (A)(1), while much of the government's evidence concerning the mail and wire fraud conspiracy focused on Russell's role in that conspiracy, the government also presented ample evidence that Cole played a role in the conspiracy. The government likewise presented significant evidence that Cole committed tax evasion and conspired with Russell to commit tax fraud. In light of all this evidence, we cannot say that the verdict was against the weight of the evidence or that "denying [Cole] a new trial would . . . result in a miscarriage of justice." See id. at 1033.

Second, the district court did not abuse its discretion in denying Cole a new trial based on admission of Government Exhibit 7. This exhibit was a list of FedEx shipments that the Coles sent to Bossany. Cole argues the exhibit was unduly prejudicial because the shipment that Cole sent contained baby clothes rather than cash bribes. However, a government witness testified that the exhibit showed all shipments from the Coles to Bossany, and the indictment explicitly alleged that the Coles gave Bossany both cash and in-kind bribes, including clothing. Cole elicited testimony on cross examination that the shipment contained clothing, and the jury was free to infer that the clothing was sent as an in-kind bribe. The district court properly denied relief on this claim.

III.

The government argues that Cole's sentence of three years probation is substantively unreasonable because it is too low in light of the sentencing factors in

18 U.S.C. § 3553(a),[3] and because the district court failed to adequately explain the sentence. Although the government characterizes the adequacy of explanation as a substantive issue, we interpret this to be a procedural error argument. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

In reviewing a sentence, "[w]e must first ensure that the district court committed no significant procedural error," such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. (internal quotation marks omitted). Absent procedural error, "we should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. (internal quotation marks omitted). We must "give[] due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." Gall v. United States, 552 U.S. 38, 59-60 (2007).

In Gall, the Supreme Court emphasized that appellate courts must play a deferential role when reviewing sentences and stated that "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id. at 51. The Court reasoned, in part, that a "sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case" because "[t]he judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains

---

[3]The government raises numerous arguments about how and why the district court ultimately imposed a sentence so low that it is substantively unreasonable. Because we agree with the government that the district court's explanation of Cole's sentence is inadequate and are remanding for the district court to provide a fuller explanation of the sentence, we do not reach the government's other arguments at this time.

insights not conveyed by the record." Id. (internal quotation marks omitted). Moreover, because the Guidelines are only advisory, the Supreme Court made clear that appellate courts cannot "require[] 'extraordinary' circumstances to justify a sentence outside the Guidelines range" or use a "rigid mathematical formula . . . as the standard for determining the strength of the justification required for a specific sentence." Id. at 47.

Although the Supreme Court in Gall emphasized the deferential nature of appellate review of sentences, it also highlighted the importance of having an adequate record on which to base that review, especially where a district court imposes a sentence outside the Guidelines range:

> If [a district court] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, [a district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

Id. at 50. The principle that "a major departure should be supported by a more significant justification than a minor one," id., applies regardless of whether the district court is varying above or below the advisory Guideline sentence. See id. at 43 (explaining that the defendant had a Guideline range of 30 to 37 months imprisonment but that the district court varied downward and imposed a sentence of 36 months probation).

Here, the district court found that Cole was responsible for causing Best Buy a loss of nearly $33 million and of evading more than $3 million in taxes. Cole and the government agree that the district court correctly calculated Cole's advisory Guideline range to be 135 to 168 months imprisonment—in other words, between

11.25 and 14 years imprisonment.  The district court varied downward and imposed a significantly lower sentence, sentencing Cole to three years probation and no term of imprisonment.  Cole's coconspirators received much harsher sentences—180 months (15 years) imprisonment for Russell and 90 months (7.5 years) imprisonment for Bossany.

Given the magnitude of the downward variance, the district court offered very little explanation for Cole's sentence.  Moreover, the relatively brief explanation that the court did offer is at times contradictory.  For example, the court stated at sentencing that it was "taking a huge chance" on Cole by imposing only a term of probation, but then said in its statement of reasons that it was confident Cole would not re-offend.  Similarly, the court's statement of reasons suggested Cole just "went along with her husband's scheme and practiced willful blindness."  However, this seems inconsistent with the guilty verdict on the tax evasion charges, because the jury instructions required the jury to find beyond a reasonable doubt that Cole "voluntarily and intentionally violate[d] a known legal duty."

Because Cole's probationary sentence represents a "major departure" from the advisory Guidelines range, the court's brief and contradictory explanation of Cole's sentence is not sufficient "to allow for meaningful appellate review and to promote the perception of fair sentencing." See Gall, 552 U.S. at 50.  Consequently, we cannot evaluate the government's claim of substantive unreasonableness at this time, and we remand for the district court to more fully explain the defendant-specific facts and policy decisions upon which it relied in determining that the probationary sentence is "sufficient, but not greater than necessary," § 3553(a), to achieve the sentencing objectives set forth in section 3553(a). See United States v. Moore, 683 F.3d 927, 932 (8th Cir. 2012).

## IV.

Accordingly, we affirm all of Cole's convictions. We do not reach the question of whether Cole's sentence is substantively unreasonable because we remand for the district court to offer a fuller explanation for the sentence.

_____