# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3053

_____

United States of America

*Plaintiff - Appellee*

v.

David Patrick Henry, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 8, 2015
Filed: June 17, 2015
[Unpublished]

_____

Before GRUENDER, MELLOY, and BENTON, Circuit Judges.

_____

PER CURIAM.

David Henry, Sr., appeals fifteen convictions of mail fraud. He admits the fraud—he looted a trust fund—but he argues that the evidence was insufficient to establish mail fraud. We affirm.

In the light most favorable to the verdict, the evidence is as follows. When Joe Swaffar died in 2004, he left a trust to benefit, among others, his wife, Sandra Swaffar. The trust was funded with over $1.6 million in life-insurance proceeds. Joe had handled his and Sandra's finances; Sandra, as witnesses later testified, was incapable of handling her money.

Henry served as trustee. He set up several accounts for the trust, but he gave Sandra access to only one, a Smith Barney account. He deposited $4,000 monthly into the Smith Barney account and told her little about the other accounts. Every month, Smith Barney mailed a statement to Sandra, which Henry then took from Sandra's post-office box to her home. But she never saw any statements from the other accounts reflecting the rest of the trust's principal, which Henry said he had invested in oil, real estate, and an annuity. Sandra believed Henry's repeated claims that the $4,000 payments were earnings from these investments, and so she thought that the trust principal was largely untouched—still "a million-two or a million-three," as Henry put it.

Though the annuity was real, the oil and real estate investments were not. Rather, Henry was stealing from the trust, taking over $850,000 altogether. The payments to the Smith Barney account were not earnings, or at least not entirely, but instead just portions of the principal. In 2008 or 2009, Henry explained to Sandra that she was broke. He blamed the economy.

Eventually, the fraud was discovered, and Henry was convicted on twenty-five counts of mail fraud, *see* 18 U.S.C. § 1341, and three counts of tax evasion, *see* 26 U.S.C. § 7201. Fifteen of those mail-fraud counts were based on the mailings of the Smith Barney account statements to Sandra's post-office box. At trial, Henry argued that these statements could not support the crime of mail fraud. The district

court,[1] however, denied Henry's motion for judgment of acquittal as to those counts. A jury found him guilty, and the court sentenced him to five years' imprisonment.

Henry now appeals, challenging only the sufficiency of the evidence as to the fifteen counts of mail fraud based on the mailings of the Smith Barney statements to Sandra's post-office box. We review *de novo*, viewing "the evidence in the light most favorable to the jury's verdict, drawing all reasonable inferences in favor of the verdict and reversing 'only where no reasonable jury could find all the elements beyond a reasonable doubt.'" *United States v. Cole*, 721 F.3d 1016, 1021 (8th Cir. 2013) (quoting *United States v. Louper–Morris*, 672 F.3d 539, 555 (8th Cir. 2012)). As relevant here, mail fraud occurs when someone, "'having devised or intending to devise any scheme or artifice to defraud, . . . for the purpose of executing such scheme or artifice or attempting so to do, . . . knowingly causes to be delivered by mail or [interstate] carrier' any matter or thing." *United States v. Fiorito*, 640 F.3d 338, 347 (8th Cir. 2011) (ellipses and alteration in original) (quoting 18 U.S.C. § 1341).

Henry argues solely that the Smith Barney statements were not mailed for the "purpose of executing [his] scheme." But the Supreme Court has held that mailings are for the purpose of executing the scheme when they are "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." *Fiorito*, 640 F.3d at 348 (quoting *United States v. Lane*, 474 U.S. 438, 451-52 (1986)).

Here, a reasonable jury could conclude that Henry caused the statements to be mailed for such a lulling purpose. Henry told Sandra that the trust was worth $1.2 or

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

$1.3 million, that he had invested the trust principal, and that the monthly payments to her were earnings on the principal. Sandra, incapable of handling her own money, believed him. And Henry himself took to Sandra's home every month the Smith Barney statements that he represented as reflecting the earnings of the supposed investments. Having received these statements and relying on Henry's representations, Sandra did not discover Henry's theft for years. In these circumstances, a jury was entitled to conclude that Henry meant for the mailings of the statements to further his scheme by lulling Sandra into a false sense of security. *See Fiorito*, 640 F.3d at 347-48 (upholding a mail-fraud conviction based on title company's mailings that prevented an "ongoing scheme from coming under scrutiny," and upholding other mail-fraud convictions based on mailings that "delay[ed] detection of the fraud"). Henry's conduct falls within the ambit of the mail-fraud statute, which prohibits uses of the mail "incident to an essential part of the scheme." *Id.* at 347 (quoting *Pereira v. United States*, 347 U.S. 1, 8 (1954)).

Henry responds, essentially, that the mailings of the statements *should* not have furthered his fraud. He argues that, because the statements did not reflect the investment of the trust principal and also showed problems with certain transactions, the statements should have alerted Sandra to the fraud, not tricked her. But the ultimate question is not whether the mailings should have furthered the fraud but whether the mailings were for the purpose of executing the scheme. Given that Sandra was vulnerable and financially unsophisticated, a reasonable jury could believe that Henry caused the mailings of the statements in order to lull her into a false sense of security—as, in fact, they did.

Because the evidence was sufficient to support Henry's convictions of mail fraud, we affirm the judgment of the district court.

_____