# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 20-2793

———————————————

United States of America

*Plaintiff - Appellee*

v.

Zachariah Michael Poor Bear

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of South Dakota - Western

——————————

Submitted: October 21, 2021
Filed: March 11, 2022
[Unpublished]

——————————

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.

——————————

PER CURIAM.

A jury convicted Zachariah Michael Poor Bear of first-degree murder and aiding and abetting first-degree murder, violations of 18 U.S.C. §§ 1111, 2, and 1153, for killing A.H., a 19-month-old girl. Poor Bear argues that his due process

rights were violated because the district court[1] allowed testimony from T.H., A.H.'s mother, that conflicted with a federal juvenile information then pending against T.H.; because the government's theory at trial, based on T.H.'s testimony, constituted a material variance from the indictment; and because those alleged due process violations together require reversal, even if each on its own does not. We affirm.

Early in the morning of May 15, 2015, Poor Bear discovered A.H.'s bruised, lifeless body in her bed in the room that she shared with Poor Bear and T.H., Poor Bear's girlfriend. During an interview with an officer at the scene, Poor Bear reported that he had put A.H. to sleep the night before because T.H. was out of the house, and that the baby had appeared healthy when she went to bed. Law enforcement first interviewed T.H. 10 months later, in March 2016, and again in July 2016 and June 2017. T.H. stated during those interviews that she had been out of the house the evening before A.H.'s body was found. She reported that she had arrived home after Poor Bear had put A.H. to bed, but that the baby woke up after she arrived and that she had seen the baby awake and conscious.

No one was charged in A.H.'s death until May 2017, when a federal grand jury returned an indictment against Poor Bear. The indictment alleged that:

> On or about May 15, 2015 . . . Zachariah Michael Poor Bear, an Indian person, while aiding and abetting a known but unnamed juvenile, and while being aided and abetted by the known but unnamed juvenile, did unlawfully and with malice aforethought, kill [A.H.] . . . in violation of 18 U.S.C. §§ 2, 1111, and 1153.

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

In June 2017, the government filed a juvenile information against T.H., charging that T.H. and Poor Bear, "while aiding and abetting one another," had murdered A.H. T.H. then signed a proffer agreement with the government. During the proffer interview, T.H. disclosed that she had not seen A.H. awake and neurologically sound the night before the baby's body was found, contradicting that which she had previously told law enforcement.

At Poor Bear's trial in July 2018, the government argued that Poor Bear alone had murdered A.H. while T.H. was out of the house, relying on the version of events that T.H. had articulated during the proffer. At a hearing outside the presence of the jury, Poor Bear objected to T.H.'s testimony, arguing that it was inconsistent with the juvenile information accusing her of A.H.'s murder. The government stated that while it had not yet dismissed the information, it believed T.H.'s proffer-interview statements—and not that which she had told investigators in 2016 and 2017—to be the truth. It further stated that it was continuing to maintain the information against T.H. because of its intention to wait and ensure that T.H.'s testimony matched her proffer account before making a full determination whether to proceed on it.

T.H. testified at trial that she had left A.H. with Poor Bear the evening before the baby was found dead. When she arrived home some five hours later that night, she intended to lift A.H. from her bed but did not do so, because Poor Bear had shouted at her to leave A.H. alone as he had just put her to sleep. T.H. then went to bed. She testified that she had not touched or approached A.H. until the morning, when Poor Bear woke her up because he had discovered that A.H. was dead. The government and defense counsel each questioned T.H. about why her story had changed from that which she had told law enforcement in 2016 and 2017. She testified that her fear of Poor Bear and his family motivated her to be untruthful in her initial interviews with law enforcement. Following Poor Bear's trial, the government dismissed the juvenile information against T.H.

Poor Bear argues that the admission of T.H.'s testimony—which implicated only Poor Bear and not T.H. herself—violated his right to due process, because her statements at trial were inconsistent with the government's juvenile information charging her with A.H.'s murder. We review *de novo* whether Poor Bear's due process rights were violated. See United States v. Ruzicka, 988 F.3d 997, 1004 (8th Cir. 2021).

Poor Bear relies on Smith v. Groose, 205 F.3d 1045 (8th Cir. 2000), in which we determined that a defendant's right to due process had been violated by the government's use of a witness's incompatible statements to convict one defendant in one trial and to convict a different defendant of the same crime in a different trial. Id. at 1048. In contrast to that which occurred in Smith, the government here did not pursue, let alone obtain, two convictions based on T.H.'s conflicting accounts. Indeed, as stated above, the government moved to dismiss the juvenile information against T.H. soon after the jury reached a verdict in Poor Bear's case. In light of these material differences, then, Smith is not applicable to the facts before us here.

Poor Bear also argues that the government's decision to maintain an information against T.H. shows her trial testimony to be false. See Napue v. Illinois, 360 U.S. 264, 269 (1959) ("[A] State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . ."). But the government was forthright at trial, disclosing to the district court that T.H. had given differing accounts of A.H.'s death and presenting to the jury evidence to support its position that her proffer was the truthful account. We thus conclude that the use of T.H.'s testimony against Poor Bear did not violate his due process rights.

Poor Bear asserts that had the government dismissed the juvenile information before trial, he could have used the dismissal to impeach T.H.'s credibility. Poor Bear has not explained why a dismissed information would have been more

compelling impeachment evidence than still-pending charges, however. Moreover, although the district court informed Poor Bear that he had "an absolute right" to "vigorously cross-examine" T.H., Poor Bear chose not to impeach T.H. with the pending information. We conclude that the government's decision to continue to maintain the information against T.H. did not violate Poor Bear's due process rights, particularly in light of the fact that he was given the opportunity to cross-examine her about her role in the offense, her inconsistent accounts of what had happened, and the fact that she had been charged with murder in a juvenile information.

Poor Bear next argues that the government's theory and the evidence presented at trial constituted a material variance from the allegations in the indictment. We review *de novo* whether a variance occurred. United States v. Cole, 721 F.3d 1016, 1023 (8th Cir. 2013). A variance exists "when the evidence presented proves facts that are materially different from those alleged in the indictment." United States v. Burns, 990 F.3d 622, 629 (8th Cir. 2021) (internal quotation marks omitted) (quoting United States v. Johnson, 719 F.3d 660, 668 (8th Cir. 2013)). But "[a] variance is harmless error if it does not prejudice a defendant's right to notice," and we will reverse only if the defendant "could not reasonably have anticipated from the indictment the evidence to be presented against him" at trial. Id. (quoting Johnson, 719 F.3d at 668–69) (alteration in original).

Poor Bear's argument that he did not have notice of the government's theory that he acted alone is unavailing. The indictment charged Poor Bear with first-degree murder under 18 U.S.C. § 1111.[2] Section 1111 and its model instructions are phrased

---

[2]The indictment also charged Poor Bear with aiding and abetting first-degree murder under 18 U.S.C. § 2. "[I]t is well established that an indictment may be phrased in the conjunctive, when the statute and jury instructions are phrased in the disjunctive, without creating a constructive amendment of the indictment . . . ." United States v. Farish, 535 F.3d 815, 823–24 (8th Cir. 2008) (quoting United States

in the singular, and require only one actor to complete the crime. 18 U.S.C. § 1111(a); Manual of Model Crim. Jury Instructions for the District Courts of the Eighth Cir. § 6.18.1111A (2021). Poor Bear thus had notice that to convict him at trial, the government needed only to prove that he, the named person in the indictment, killed A.H. See Burns, 990 F.3d at 629 ("True, the indictment charged 'the Defendants, Tobias Ritesman and Timothy Burns,' with violating § 1343 and stated that Burns and Ritesman had worked together to perpetuate wire fraud. But both § 1343 and its model jury instruction are phrased in the singular, making clear that the government had to prove that Burns alone, not Burns and Ritesman together, violated § 1343." (citation omitted)); see also United States v. Emery, 186 F.3d 921, 928 (8th Cir. 1999) ("[E]ven if this discrepancy amounted to a variance, Mr. Emery suffered no resulting prejudice. In our view, the indictment made Mr. Emery well aware of the fact that he faced the charge of murdering Ms. Elkins, and that he would have to answer for his part in causing her death."). The indictment informed Poor Bear of the proof that the government was required to present in order to convict him. We thus conclude that even had a variance existed, it would not have resulted in prejudice to Poor Bear.

Poor Bear's final argument is that the combined effect of the alleged errors violated his due process rights and requires reversal, even if when considered individually they may not have done so. He relies on Chambers v. Mississippi, in which the cumulative effect of the trial court's application of state rules of evidence was held to have deprived the defendant of his constitutionally guaranteed right to present a defense. 410 U.S. 284, 290 n.3, 302 (1973). The individual issues that Poor Bear points to did not constitute multiple errors that when combined resulted in a constitutional deficiency. Rather, he asserts two different theories on why a single alleged error, the government's introduction of T.H.'s non-self-implicating testimony,

---

v. Brown, 330 F.3d 1073, 1078 (8th Cir. 2003)). The government was thus required to prove only one of the two theories at trial.

violated his right to due process.  Further, unlike the defendant in <u>Chambers</u>, Poor Bear has not shown that he was denied the ability to present his defense, for he was fully able to cross-examine each of the government's witnesses—including T.H.—and to present his own evidence.  Because no due process violations occurred, we affirm the judgment.

_____