05-5985-cr
United States v. Wilson

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: August 29, 2007     Decided: September 24, 2007)

Docket No. 05-5985-cr

- - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                    Appellee,

        -v.-                                05-5985-cr

MALETHA WILSON,

                    Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - -x


        Before:        JACOBS, Chief Judge, KATZMANN, and HALL,
                       Circuit Judges.

        Petitioner Maletha Wilson appeals from a judgment of

conviction on two counts of 21 U.S.C. § 856(a)(2) in the

United States District Court for the Western District of New

York, Siragusa, J.  Affirmed.

                              JONATHAN SVETKEY, Watters &
                              Svetkey, LLP, New York, New
                              York, for Appellant.

BRADLEY E. TYLER, Assistant United States Attorney, *of counsel* (Terrance P. Flynn, United States Attorney, Western District of New York, *on the brief*), United States Attorney's Office for the Western District of New York, Rochester, New York, *for Appellee*.

PER CURIAM:

Defendant-Appellant Maletha Wilson appeals from a judgment of conviction entered in the United States District Court for the Western District of New York (Siragusa, *J.*), convicting her after a jury trial of two counts of knowingly and intentionally making her residence available for use for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance, in violation of 21 U.S.C. § 856(a)(2). She shared two apartments with a drug dealer, and acknowledges that there were drugs, along with drug-related paraphernalia, at both premises; but she argues that the evidence was insufficient chiefly on the ground that the government failed to prove that she herself intended that the premises would be used for the unlawful purpose.

**BACKGROUND**

On October 3, 2002, Rochester police officers arrested one Yusef Blocker outside 323 Arnett Boulevard, where he was living with Wilson. Wilson allowed the police to enter her apartment, told them that she wanted to check on her baby in a back bedroom, and was followed there by the police. There, they saw--in plain view--a razor, a plate, and two plastic bags containing a white rock substance. At trial, Wilson stipulated that the substance was 12.836 grams of cocaine base. Also in the bedroom were unused Ziploc bags and a razor blade in the baby's coat.

On May 7, 2004, Rochester police officers executed a search warrant at 35 Jackson Street, where Wilson was then living. No one was present when the officers entered and found a digital scale and unused Ziploc bags in the master bedroom closet. In another bedroom, the officers found a cigar box containing a substance which they suspected was cocaine. At trial, Wilson stipulated that the substance consisted of 61.690 grams of powder cocaine and 31.648 grams of cocaine base.

On February 23, 2005, Wilson was interviewed by a

3

special agent of the Bureau of Alcohol, Tobacco and Firearms. She said that she was living with Yusef Blocker in the apartment on Arnett Boulevard when it was searched in October 2002, and that she was living with Blocker at 35 Jackson Street when it was searched in May 2004. Evidence at trial also indicated that her name was on both leases. The Department of Social Services paid half the rent (and her mother the other half) at each location.

**DISCUSSION**

Wilson argues that the evidence against her was insufficient to support her conviction. A defendant challenging the sufficiency of the evidence "bears a heavy burden." United States v. Griffith, 284 F.3d 338, 348 (2d Cir. 2002). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt," the conviction must stand. United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir. 1995) (internal citations omitted).

4

**I**

In the main, Wilson contends that under 21 U.S.C. § 856(a)(2), the government had to prove that, in making her home available to others, it was Wilson's own purpose to allow them to engage in narcotics trafficking there. This is a fundamental misreading of subsection (a)(2).

Section 856(a)(2) makes it unlawful for a person to:

> manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

The law thus prohibits a person with a premises from knowingly and intentionally allowing its use for the purpose of manufacturing, storing or distributing drugs. The intent of the prohibition is "to prohibit an owner from providing a place for illegal conduct, and yet to escape liability on the basis either of lack of illegal purpose, or of deliberate ignorance". United States v. Tamez, 941 F.2d 770, 774 (9th Cir. 1991). Accordingly, "under § 856(a)(2), the person who manages or controls the building and then

5

rents to others, need not have the express purpose in doing so that drug related activity take place; rather such activity is engaged in by others (i.e., others have the purpose)." United States v. Chen, 913 F.2d 183, 190 (5th Cir. 1990). The phrase "for the purpose," as used in this provision, references the purpose and design not of the person with the premises, but rather of those who are permitted to engage in drug-related activities there.

This interpretation is compelled by the preceding subsection, 856(a)(1), in which the phrase "for the purpose" applies to the intent of the person with an interest in the premises. That is, subsection 856(a)(1) makes it illegal to:

> knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance.

Under Wilson's reading, both subsections--(a)(1) and (a)(2) --would proscribe the same conduct. But it would be impermissible to conflate these two subsections, rendering one superfluous. See Williams v. Taylor, 529 U.S. 362, 404 (2000) ("It is . . . a cardinal principle of statutory

construction that we must give effect, if possible, to every clause and word of a statute." (internal citation and quotation marks omitted)).

## II

Wilson also challenges the sufficiency of the evidence to prove that she knew her residence was being used for drug trafficking. Our review of the trial record discloses sufficient evidence to support Wilson's conviction. A cooperating witness testified that on numerous occasions, he and Blocker engaged in drug manufacturing activities at both of Wilson's residences, and that he overheard Blocker ask Wilson for Ziploc bags and a Pyrex dish, two items used for those activities. Wilson admitted to the police that she knew Blocker sold drugs. And crack cocaine, cocaine powder and drug paraphernalia were found in her residences, including a razor and Ziploc bags in baby clothes in her bedroom. Given this evidence, a reasonable jury could--and did--conclude that Wilson knowingly allowed others to use those residences for the manufacture, storage and distribution of narcotics.

For the foregoing reasons, the judgment of the district court is affirmed.