# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3485

_____

United States of America

*Plaintiff - Appellee*

v.

James Tebeau

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 9, 2013
Filed: April 30, 2013

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

James Tebeau owns more than 300 acres of land in southern Missouri where he has held weekend music festivals at which drug use was widespread. After undercover officers investigated the festivals, Tebeau was charged with having maintained a property from 2004 to 2011 for the purpose of manufacturing, storing, and distributing controlled substances in violation of 21 U.S.C. § 856(a)(2). Tebeau moved to dismiss the indictment, arguing that it was deficient because it alleged only

that he had allowed others to distribute controlled substances on his property. The district court[1] denied Tebeau's motion, concluding that a defendant may be indicted under § 856(a)(2) for making a property available for drug distribution without any further illegal purpose. Tebeau pled guilty but reserved his right to appeal the denial of his motion to dismiss. The district court sentenced Tebeau to 30 months imprisonment, two years of supervised release, and a $50,000 fine. Tebeau now appeals, and we affirm.

I.

Tebeau owns more than 300 acres of land in Shannon County, Missouri known as "Camp Zoe." From 2004 to 2010, Camp Zoe was the site of 24 weekend festivals known variously as "Spring Jam," "Schwagstock," or "Spookstock." The festivals were held on a monthly basis from April to October. Tebeau invited various bands to perform at the festivals, and he also performed with his own Grateful Dead tribute band, The Schwag. Attendees paid $60 to enter Camp Zoe for a three day festival, and the number of attendees at each festival ranged from approximately 3,600 to nearly 8,000.

After government officials had arrested several individuals near Tebeau's property for using or selling drugs, they conducted an undercover investigation into illegal drug sales at Camp Zoe. Between April 2009 and August 2010, undercover officers attended ten music festivals and made more than 150 controlled purchases of illegal drugs including marijuana, psychedelic mushrooms, ecstacy, cocaine, LSD, MDMA, opium, and moonshine liquor. The officers observed 100 to 200 drug sellers at each festival and estimated that approximately $500,000 in illegal drugs

---

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri.

were sold at each event. Officers also witnessed many campers using controlled substances, and saw that the sale and use of drugs was open and obvious. Some sellers congregated along a gravel road known as "Lovers Lane" where they displayed the drugs they were selling and shouted to passing campers that they had "Nuggets" (marijuana), "Doses" (LSD), or "Molly" (ecstasy) for sale. Other sellers walked through camp advertising marijuana stalks with large buds of marijuana attached.

Tebeau was present at almost every Camp Zoe festival and admits that he was aware of drug sales at the festivals. He operated a medical facility on the campground known as "Safestock," where campers who had overdosed were treated during each festival. Campers who were combative or violent were handcuffed or tied down with nylon straps. Investigative reports indicated that instances of drug overdose occurred at every festival, and Tebeau met with his employees after each festival to discuss drug overdoses and other problems which had arisen during the event. During interviews with Camp Zoe employees, officers learned that Tebeau had instructed them that certain types of drugs were permissible at the camp, such as marijuana, LSD, and mushrooms, but that anyone selling crack cocaine, methamphetamine, heroin, or nitrous oxide gas should be ejected. According to employees, Tebeau instructed security guards in the camp to move sellers away from the front gates to avoid detection by officers.

In November 2010 a federal search warrant was executed at Camp Zoe, and Tebeau was thereafter indicted on one count of managing a drug involved premises in violation of 21 U.S.C. § 856(a)(2). Tebeau moved to dismiss the indictment, arguing that it was deficient as a matter of law because it did not allege facts showing that he had the specific intent to sell illegal drugs on his property. After the district court adopted the magistrate judge's report and recommendation denying his motion to dismiss, Tebeau entered a conditional guilty plea reserving his right to appeal the denial of that motion. In the plea agreement, the government stipulated that Tebeau had not participated in any drug sales or received any funds from their sale. Tebeau

admitted, however, that he had "intended that Camp Zoe be made available" for individuals who "had the intent to sell and use controlled substances," and that he was responsible "for the distribution by others of the equivalent of at least 700 kilograms of marijuana." The district court required Tebeau to pay a $50,000 fine, and it sentenced him to 30 months in prison and two years of supervised release.

Tebeau appeals the district court's denial of his motion to dismiss the indictment. He first challenges the court's interpretation of § 856(a)(2), contending that the statute should be read to require the government to show that he had the specific intent to store, distribute, manufacture, or use drugs at Camp Zoe. Under this reading, Tebeau argues that the indictment was deficient because it did not allege facts showing that he had possessed such specific intent. Tebeau also contends that the indictment did not comply with the requirements of Federal Rule of Criminal Procedure 7(c).

II.

We review a district court's interpretation and application of a statute de novo. United States v. Petrovic, 701 F.3d 849, 858 (8th Cir. 2012). The statute at issue, 21 U.S.C. § 856, contains two subsections making it a crime to:

(a)(1) knowingly <u>open or maintain any place for the purpose of</u> manufacturing, distributing, or using any controlled substance;

(a)(2) manage or control any place whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and <u>knowingly and intentionally rent, lease, profit from, or make available</u> for use, with or without compensation, <u>the place for the purpose of</u> unlawfully manufacturing, storing, distributing, or using a controlled substance.

-4-

(emphasis added). Tebeau was charged with violating subsection (a)(2). The district court concluded that § 856(a)(2) did not require proof that Tebeau had the specific intent to manufacture, store, distribute, or use a controlled substance. Rather, § 856(a)(2) only required that the government show that Tebeau intended to make the property available for others who had that purpose.

## A.

Tebeau first argues that the district court's reading of § 856(a)(2) conflicts with the statute's text and legislative history, and that the statute should be interpreted to require proof that he specifically intended illegal drugs to be manufactured, stored, distributed, or used on his property. We have not before considered whether § 856(a)(2) criminalizes a defendant's knowing and intentional making available such a place even if he himself does not have the purpose to manufacture, store, distribute, or use a controlled substance there. The "starting point in interpreting a statute is always [its] language." United States v. Jungers, 702 F.3d 1066, 1069 (8th Cir. 2013) (citation omitted). If the intent of Congress is clear from the statute's language, our inquiry is complete. Id. In interpreting § 856(a)(2), we consider both the "bare meaning of the critical word or phrase" and "its placement and purpose in the statutory scheme." Holloway v. United States, 526 U.S. 1, 6 (1999) (citation omitted) (internal quotation marks omitted).

Several circuit courts have considered the meaning of § 856(a)(2)'s plain language, and their analysis is useful in interpreting the statute. In United States v. Chen, 913 F.2d 183 (5th Cir. 1990), the Fifth Circuit concluded that the government need not show that a property owner had the illegal purpose of storing, distributing, using, or manufacturing a controlled substance to convict her under § 856(a)(2). Id. at 190. In Chen, the owner of a motel which had become "an area for drug traffickers" was charged with violating both § 856(a)(1) and (a)(2). Id. at 185–86.

The district court instructed the jury that it could convict her under either subsection if it found she had been deliberately ignorant to the drug use at her hotel. Id. at 187.

On appeal, the Fifth Circuit considered whether the phrase "for the purpose of" in both subsections of § 856(a) precluded a deliberate ignorance instruction. Id. at 188. In reviewing § 856(a)(1), the court concluded that "the phrase for the purpose of applies to the person who opens or maintains the place for the illegal activity." Id. at 190. A deliberate indifference instruction would therefore be improper under subsection (a)(1) which requires proof of "specific purpose to engage in drug activities." Id. at 189. Section 856(a)(2), by contrast, applies "to the person who may not have actually opened or maintained the place for the purpose of drug activity, but who has knowingly allowed others to engage in those activities" by making the place available for unlawful use. Id. at 190. The Fifth Circuit concluded that under § 856(a)(2) "the person who manages or controls the [property] and then rents to others[] need not have the express purpose in doing so that drug related activity take place," as long as "others have the purpose." Id.

Other circuits have agreed that § 856(a)(2) only requires that a defendant has the purpose of maintaining property where drug use takes place, and not that the defendant intends the drug use to occur. In United States v. Tamez, 941 F.2d 770 (9th Cir. 1991), the Ninth Circuit concluded that the "plain meaning and interrelation of the two § 856 provisions" suggest that § 856(a)(2) does not require proof that the defendant intended to use a property for a prohibited purpose. Id. at 774. The Tamez court reasoned that § 856(a)(1) applies "to purposeful activity," and that interpreting § 856(a)(2) to require an illegal purpose would cause the subsections to overlap "entirely" and carry "no separate meaning." Id. The Second Circuit has followed Chen and Tamez, observing that any other reading of § 856(a)(1) and § 856(a)(2) would "conflate these two subsections, rendering one superfluous." United States v. Wilson, 503 F.3d 195, 198 (2d Cir. 2007). The First and Seventh Circuits have

reached similar conclusions. See United States v. Bilis, 170 F.3d 88, 92–93 (1st Cir. 1999); United States v. Banks, 987 F.2d 463, 466 (7th Cir. 1993).

We agree with the other circuits that the "bare meaning" of the purpose requirement in § 856(a)(2) indicates that the government was not required to prove that Tebeau had the intent to manufacture, distribute, or use a controlled substance to convict him under the statute. Holloway, 526 U.S. at 6. Tebeau's reading of § 856(a)(2) to require proof of specific intent to manufacture, distribute or use controlled substances would render it redundant with § 856(a)(1). See Wilson, 503 F.3d at 198; Tamez, 941 F.2d at 774; Chen, 913 F.2d at 190. Such an interpretation would conflict with the "cardinal principle of statutory construction that [we] must give effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404 (2000) (citation omitted) (internal quotation marks omitted).

Although we need not look beyond the statute's text, see Jungers, 702 F.3d at 1069, we note that our court's case law also supports this conclusion. In United States v. Harrison, 133 F.3d 1084 (8th Cir. 1998), we considered a case in which a defendant had been charged with violating § 856(a)(2) by allowing a neighbor to manufacture methamphetamine in a trailer on his property. Id. at 1085. The jury instructions had stated that the government was "not required to prove [the defendant] intended to use the building for the prohibited purpose," but only that "the proscribed activity . . . was present and that [he] knew of and intentionally allowed the activity to continue." Id. at 1086. After the defendant was convicted, he appealed and challenged the sufficiency of the evidence. We observed that the defendant "does not suggest, nor do we conclude, that the jury instructions misstate the law." Id. (emphasis added). Rather, the jury's conviction was proper based on ample evidence that the defendant had "knowingly and intentionally . . . made his property available for the manufacture of methamphetamine." Id.

The Eighth Circuit's model jury instructions similarly indicate under § 856(a)(2), its "purpose element may be satisfied if the individuals using the location are engaged in illegal activity." 8th Cir. Model Crim. Jury Instr. § 6.21.856B (2011) (citing Banks, 987 F.2d at 466; Chen, 913 F.2d at 189–90). The Committee Comments to the model instructions clarify that unlike "subsection (a)(1), the specific requirement in subsection (a)(2) may be satisfied if the person or persons renting, leasing, or using the property possesses the requisite purpose." They further explain that a "defendant may be liable if he manages or controls a building that others use for an illicit purpose, and he either knows of the illegal activity or remains deliberately ignorant of it."

We conclude that § 856(a)(2) does not require proof that Tebeau had the illegal purpose to use, manufacture, sell, or distribute controlled substances; it is sufficient that Tebeau intended to make his property available to others who had that purpose. This conclusion is mandated by the text and structure of § 856(a)(1) and (a)(2), and it is consistent with the case law and jury instructions in our circuit and others.

B.

Tebeau next argues that interpreting § 856(a)(2) to lack a specific intent requirement renders the statute unconstitutionally vague in violation of the Fifth Amendment due process clause. A statute is unconstitutional for vagueness if it fails to "provide adequate notice of the proscribed conduct" or "lend[s] itself to arbitrary enforcement." United States v. Birbragher, 603 F.3d 478, 485 (8th Cir. 2010) (citation omitted) (internal quotation marks omitted). Tebeau contends that such an interpretation of § 856(a)(2) would allow law enforcement to enforce it selectively and would give festival promoters no guidance as to what level of precautions could lawfully be made available to treat those who use drugs at festivals.

-8-

The Sixth Circuit in United States v. Rosa, 50 F. App'x 226 (6th Cir. 2008) (unpublished), rejected Tebeau's vagueness argument and explained that § 856(a)(2) "furnishes fair notice that it is illegal for a homeowner to knowingly and intentionally allow her house to be used in the distribution of drugs." Id. at 227. We agree that § 856(a)(2) is not unconstitutionally vague because it prohibits a person from knowingly and intentionally making his property available for others to use or sell controlled substances. The inclusion of a specific mens rea element provides fair notice to Tebeau and others that certain conduct is prohibited. See Colautti v. Franklin, 439 U.S. 379, 395 (1979). Tebeau also supplies no evidence to support his argument that § 856(a)(2) has lent itself to arbitrary enforcement. See Kolender v. Lawson, 461 U.S. 352, 357 (1983). Moreover, Tebeau has admitted that he was aware of the large amount of drug sales at Camp Zoe and that he knew the camp would be used for other people to sell drugs during festivals. Drug sellers marketed their products openly on his Lover's Lane, and campers who had overdosed were handcuffed and tied down in Safestock. Such open and obvious drug use is precisely the conduct prohibited by § 856(a)(2)'s plain language, and the statute therefore was not unconstitutionally vague as applied to Tebeau.

Tebeau also argues that our interpretation of § 856(a)(2) violates his First Amendment rights by effectively preventing him from organizing music festivals. He contends that both speech (music) and nonspeech (making Camp Zoe available as a concert venue) activities are regulated by § 856(a)(2). Where "'speech' and 'nonspeech' elements are combined in the same course of conduct," the government regulation is justified if (1) "it is within the constitutional power of the Government," (2) "it furthers an important or substantial governmental interest," (3) "the governmental interest is unrelated to the suppression of free expression," and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." United States v. O'Brien, 391 U.S. 367, 376–77 (1968). Only the third and fourth of these elements are at issue here. As to the third element, Tebeau argues that § 856(a)(2) fails because it was originally aimed

at eliminating music festivals with high drug use which is a form of protected speech. He contends that § 856(a)(2) also fails to satisfy the fourth element because it too broadly punishes organizers and promoters of music festivals.

We conclude that § 856(a)(2) satisfies the O'Brien test and therefore does not violate the First Amendment. As to the third element, the government interest in regulating drug use is unrelated to any incidental impact the law has on music festivals. Similarly with respect to the fourth element, a prohibition on knowingly making premises available for drug use imposes only an incidental restriction on music festival hosts which does not "significantly compromise" their First Amendment rights. Bd. of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 574 (1987). Tebeau's concern about the "chilling effect" of § 856(a)(2) on music festivals is also overstated. Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973). He cites no case in which the government has charged another music festival organizer under the statute, and Tebeau's own involvement in the drug activities at Camp Zoe was extensive. We conclude that § 856(a)(2) does not violate the First Amendment.

C.

Tebeau also argues that the indictment failed to state adequately the offense with which he was being charged. We review the sufficiency of an indictment de novo. United States v. Hance, 501 F.3d 900, 906 (8th Cir. 2007). An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charge." Fed. R. Crim. P. 7(c). The test of the sufficiency of an indictment "is not whether it could not have been made more definite and certain, but whether it contains the elements of the offense charged, and sufficiently apprises the defendant of what he must be prepared to meet, and in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." United States v. Debrow, 346 U.S. 374, 376 (1953) (citation omitted) (internal quotation

marks omitted). An indictment which "tracks the statutory language" is ordinarily sufficient. United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008).

Tebeau contends that the indictment against him was insufficient because it failed to allege "operative facts or circumstances to show that [he] knowingly and intentionally made his property available for use and did so with an illegal purpose in mind." Our conclusion that § 856(a)(2) contains no purpose requirement with respect to Tebeau means that the indictment need not allege any facts showing his purpose. The indictment sufficiently described Tebeau's offense conduct in making his property available for illegal use. It alleged that Tebeau "knowing and intentionally profited from and made [Camp Zoe] available for use . . . for the purpose of unlawfully storing, distributing, or using controlled substances." This language "tracks the statutory language" of § 856(a)(2), Sewell, 513 F.3d at 821, and it "sufficiently apprise[d]" Tebeau of the charges against him to allow him to prepare a defense, Debrow, 346 U.S. at 376. We conclude that the indictment therefore satisfied the requirements of Federal Rule of Criminal Procedure 7(c).

IV.

Accordingly, we affirm the judgment of the district court.

_____