# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1587

_____

United States of America

*Plaintiff - Appellee*

v.

Thomas Whitlow

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 20, 2015
Filed: March 7, 2016

_____

Before RILEY, Chief Judge, BEAM and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Following a three-day trial, a jury convicted Thomas Whitlow of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and four counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. The district court[1] sentenced Whitlow to

_____

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

five concurrent terms of imprisonment of 108 months. Whitlow appeals, claiming the evidence was insufficient to establish his participation in the conspiracy and that the court erred in admitting his co-conspirators' testimony. He also challenges the sufficiency of the indictment and the substantive reasonableness of his sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Using family information he obtained from newspaper obituaries, Whitlow called elderly people claiming to be a relative in need of immediate funds to cover an emergency, such as an arrest or car accident. The people called were directed to wire the money to Tempest Amerson, Isys Jordan, or Rosland Starks, who then forwarded the money to Whitlow's wife, Yolanda Clemons. Amerson, Jordan, and Starks received a small portion of the wired money for their part in the scheme.

A 12-count indictment was entered against Whitlow and the others, charging them with conspiracy to commit wire fraud and eleven counts of wire fraud. Whitlow pleaded not guilty. Clemons, Amerson, Jordan, and Starks pleaded guilty and testified at the trial. Whitlow objected to a portion of their testimony as inadmissible hearsay. After conditionally allowing the testimony, the court determined at the close of the government's case that the disputed statements were admissible co-conspirator statements.

Following the close of the government's evidence, Whitlow moved for a judgment of acquittal on all counts. The government agreed on seven of the wire fraud counts and the court dismissed those counts. The court denied Whitlow's motion for judgment of acquittal on the remaining counts.

At the close of all the evidence, Whitlow renewed his motion for judgment of acquittal on the remaining five counts. The district court denied the motion. The jury

found Whitlow guilty on all counts.  Whitlow again moved for a judgment of acquittal, which was again denied by the district court.

At Whitlow's sentencing hearing, the district court determined Whitlow's offense level was 17 and his criminal history category was VI, resulting in an advisory Sentencing Guidelines range of 51 to 63 months' imprisonment.  The district court varied upward from the calculated range based on Whitlow's thirty-five year history of committing larceny, burglary, and shoplifting—which included previous convictions for committing wire fraud against the elderly—and the fact that Whitlow was under federal supervision when he committed the offenses in this case.  The court sentenced Whitlow to a term of imprisonment of 108 months on each count, to be served concurrently.

## II.  Discussion

On appeal, Whitlow raises several issues.  We address each in turn.

### A.  Sufficiency of the Indictment

Prior to trial, Whitlow filed a pro se motion, which the court construed as a motion to dismiss the indictment for lack of sufficient evidence.  On appeal, Whitlow argues that the indictment was so deficient that it failed to charge the offenses of conspiracy to commit wire fraud and wire fraud, and that the grand jury lacked sufficient evidence to indict him.[2]  Our review of a challenge to the sufficiency of an

---

[2]In his reply brief, Whitlow also asserts, in connection with his sufficiency argument, that "the United States failed to establish and prove the material fact that the federal court had federal criminal jurisdiction of the matter" because the indictment failed to state that the federal court had jurisdiction over the States where the acts in furtherance of the conspiracy were committed.  First, we do not consider arguments raised for the first time in a reply brief.  Viking Supply v. National Cart

-3-

indictment is de novo. United States v. Tebeau, 713 F.3d 955, 962 (8th Cir. 2013). An indictment is sufficient if it contains the elements of the offense charged, lets the defendant know what he needs to do to defend himself, and would allow him to plead a former acquittal or conviction if he were charged with a similar offense. Id. Usually an indictment that tracks the statutory language is sufficient. Id.

Whitlow does not specifically identify how the indictment is deficient. Instead he generally challenges it as "bare bones" and "without any factual statement of his involvement," such that none of the "elements of conspiracy can be proven." To the extent Whitlow's argument relies on a lack of proof, we agree with the district court that such a challenge to an indictment is not allowed. See Costello v. United States, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits."). Moreover, our review of the indictment shows it includes all the elements of the crimes charged. The district court did not err in denying Whitlow's motion to dismiss the indictment.

## B. Admission of Co-Conspirator Statements

At trial, Clemons, Amerson, Jordan, and Starks testified about conversations they had with each other and with Whitlow about the wire fraud scheme. Whitlow claims the district court erred in allowing this testimony because independent evidence did not establish the existence of a conspiracy. Federal Rule of Evidence 801(d)(2)(E) allows the admission of a statement made by a co-conspirator of a defendant if the statement was made "during and in furtherance of the conspiracy." In order for an out-of-court statement of a co-conspirator to be admissible, the

---

Co., Inc., 310 F.3d 1092, 1099 (8th Cir. 2002). Second, Whitlow cites no legal authority to support his argument. Id. ("[I]t is not this court's job to research the law to support an appellant's argument.") (quoting Lusby v. Union Pacific R. Co., 4 F.3d 639, 642 (8th Cir. 1993)).

government must show by a preponderance of the evidence "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978). "[A]lthough courts may consider the contents of the statements, the government must produce independent evidence outside of the statements themselves to establish the existence of the conspiracy." United States v. Young, 753 F.3d 757, 771 (8th Cir. 2014). The independent evidence needed to establish the existence of a conspiracy may be entirely circumstantial. Id. We review a district court's admission of out-of-court statements pursuant to Federal Rule of Evidence 801(d)(2)(E) for an abuse of discretion, recognizing that a district court's discretion is broad in conspiracy trials. Id.

Here, the district court conditionally allowed Clemons, Amerson, Jordan, and Starks to testify about discussions they had with each other and with Whitlow regarding the wire transfers. At the close of the government's case, the court found that the government had proven by a preponderance of the evidence all the Bell prerequisites. In doing so, the district court considered the contents of the statements themselves but also found there was independent evidence establishing the existence of the conspiracy.

Included in the statements the district court conditionally admitted was testimony from Amerson recounting how she had been recruited by her aunt, Yolanda Clemons, in May 2011 to pick up wire transfers and forward them to Clemons. Amerson testified Clemons directed her to pick up the wire transfers from one location and forward the money from a different location. Amerson testified it was usually Clemons who gave her the information about who was sending the wire transfers but that on one occasion Whitlow gave her the information. Amerson testified that Clemons told her she could keep some of the money but not to ask any questions. Amerson testified regarding receiving wire transfers from Keith Reasoner

-5-

and Edna Bennett. At Clemons's request, Amerson recruited Jordan to assist with the wire transfers.

Clemons corroborated Amerson's testimony, stating that in early May 2011, Whitlow asked her to look up telephone numbers from out-of-state obituaries and to recruit others to pick up wire transfers. Clemons contacted her niece, Amerson, to ask her to assist, and Amerson agreed. Clemons testified she gave the telephone numbers she found to Whitlow. Whitlow would tell her there was going to be a wire transfer and she would then contact Amerson to pick up the wire transfers. Clemons testified she would either spend the money she received or give it to Whitlow. Clemons testified she told Amerson the procedure to follow in picking up the wire transfers and asked Amerson if she knew anyone else who would pick up wire transfers.

Jordan testified Amerson contacted her in August 2011 asking her if she needed extra money and would pick up wire transfers. Jordan testified she also spoke with Clemons and Whitlow about additional wire transfers. Starks testified she was contacted by Clemons to pick up wire transfers.

The court found the conditionally admitted testimony was independently corroborated by Edna Bennett, Elvena English, and Keith Reasoner, who testified to receiving calls from a male caller who identified himself by name as a nephew. The male caller then asked each of them to wire money purportedly to help him out in a time of need, and he gave them wire transfer information, including the name of the person who would receive the money. Reasoner and Bennett were told to wire money to Amerson, and English was told to wire money to Jordan. All three stated they did not know the person to whom they were directed to wire money. English identified a piece of paper on which she had written Jordan's name and address while talking to the male caller. The name and address on the piece of paper matched the name and

address on the receipt English received from Western Union when she wired the money.

All three victims also testified that a relative had recently died, that the obituary was in the newspaper, and that the obituary contained their own name as well as the name of their nephew. Reasoner's, Bennett's, and English's real nephews also testified at trial. The nephews testified they knew nothing about the wire transfers being sent, had not requested the transfers, and did not know Amerson or Jordan. Amerson testified that while staying with Clemons, she saw obituaries and related documents at the Clemons and Whitlow residence. The government also presented business records from Moneygram and Western Union corroborating Amerson's and Jordan's testimony about receiving and sending wire transfers. Finally, the jury heard recorded telephone calls between Amerson, Clemons, and Whitlow discussing an unsuccessful wire transfer. The evidence presented was sufficient to independently corroborate the existence of a conspiracy between Whitlow and Clemons, Amerson, Jordan, and Starks, see Young, 753 F.3d at 771–72, and the district court did not abuse its discretion in admitting the co-conspirator testimony.

## C. Sufficiency of the Evidence

Whitlow contends the evidence was insufficient to support his convictions for conspiracy to commit wire fraud and wire fraud. In considering Whitlow's challenge to the jury's verdict, we review de novo the sufficiency of the evidence to sustain the conviction. United States v. Cole, 721 F.3d 1016, 1021 (8th Cir. 2013). "We view the evidence in the light most favorable to the jury's verdict, drawing all reasonable inferences in favor of the verdict and reversing 'only where no reasonable jury could find all the elements beyond a reasonable doubt.'" Id. (quoting United States v. Louper-Morris, 672 F.3d 539, 555 (8th Cir. 2012)). We do not reweigh the evidence or assess the credibility of witnesses. United States v. Dugan, 238 F.3d 1041, 1044–45 (8th Cir. 2001).

Whitlow asserts that the only evidence directly connecting him to the conspiracy or any individual fraudulent wire transfers is the testimony of Clemons, Amerson, and Jordan. Whitlow asserts this testimony may be sufficient to show these three individuals were engaged in a wire fraud scheme. But without additional corroborating evidence, he argues, it is insufficient to link him to their criminal activity. Initially, we note it is not necessary for accomplice testimony to be corroborated to uphold a conviction. See United States v. Fuller, 557 F.3d 859, 863 (8th Cir. 2009). To the extent Whitlow argues that Clemons, Amerson, and Jordan were not credible witnesses because they all testified pursuant to beneficial plea agreements, these are matters for the jury. "We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Coleman, 525 F.3d 665, 666 (8th Cir. 2008). Barring testimony that is incredible on its face, it was up to the jury to decide whether to believe some, all, or none of the testimony of Clemons, Amerson, and Jordan. Fuller, 557 F.3d at 863. Furthermore, the evidence independently corroborating the co-conspirator statements also supports the guilty verdict. In light of all the evidence presented, we cannot conclude that "no reasonable jury" could have found Whitlow guilty of the conspiracy and the individual wire transfer charges.[3] See Cole, 721 F.3d at 1021.

---

[3]Whitlow separately appeals the district court's denial of his three motions for a judgment of acquittal which were likewise based on insufficiency of the evidence. We review de novo the denial of a motion for a judgment of acquittal based on the sufficiency of the evidence. United States v. Chatmon, 742 F.3d 350, 352 (8th Cir. 2014). We view the evidence in the light most favorable to the verdict and accept all reasonable inferences that may be drawn in favor of the verdict, and we affirm unless no reasonable jury could have found the defendant guilty. Id. For the reasons set forth above, we conclude the district court did not err in denying Whitlow's motions for judgment of acquittal.

## D. Substantive Reasonableness of Sentence

Whitlow argues his sentence was substantively unreasonable because it was nearly double the 51 to 63 month sentence recommended under the advisory Sentencing Guidelines. We review the substantive reasonableness of a sentence for an abuse of discretion. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). Our review of the substantive reasonableness of a sentence is narrow and deferential, and it is "the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Sentencing Guidelines range—as substantively unreasonable." United States v. Kelley, 652 F.3d 915, 918 (8th Cir. 2011) (quoting Feemster, 572 F.3d at 464). When a district court varies outside the applicable Guidelines range, we consider the extent of the variance, but we "give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." Ferguson v. United States, 623 F.3d 627, 631 (8th Cir. 2010) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

In explaining Whitlow's sentence, the district court stated it was considering all of the § 3553(a) factors, particularly the nature and circumstances of the wire fraud offenses, Whitlow's particular criminal history, and the need to protect the public from Whitlow. The court noted that Whitlow had been convicted 16 different times for various offenses, mostly thefts, burglary, and wire fraud, and that receiving sentences of increasing length had not deterred him. Finding that the Sentencing Guidelines did not adequately account for his prior conduct, his utter disregard for the law, and his pattern of preying on the elderly in similar wire fraud type cases, the district court varied upward to a sentence of 108 months' imprisonment on all five counts, to be served concurrently. Whitlow does not contend that the factors the court considered were improper but asserts that a sentence almost twice the length recommended by the Guidelines is by its very nature unreasonable. But as we have noted, the Supreme Court has "specifically rejected using 'the percentage of a departure as the standard for determining the strength of the justifications required

-9-

for a specific sentence.'" Ferguson, 623 F.3d at 631 (quoting Gall, 552 U.S. at 47). Here, the factors considered by the district court were all appropriate ones. The district court did not abuse its discretion in fashioning the sentence it found necessary to satisfy the sentencing goals of 18 U.S.C. § 3553(a).

### III. Conclusion

For the reasons set forth above, we affirm.

_____