# United States Court of Appeals
## For the Eighth Circuit
_____

No. 18-3517
_____

United States of America

*Plaintiff - Appellee*

v.

Scott Francis Fortier

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 13, 2019
Filed: April 15, 2020
_____

Before LOKEN, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Scott Fortier used his iPhone to record himself having sex with two underage girls just hours apart. A jury found him guilty of two child-pornography counts. Although he challenges his convictions on a host of grounds, we affirm.

## I.

Fortier met both girls at a summer camp in central Minnesota. C.J., the older of the two, started attending camp around age 10 and became a counselor in her mid-teens. S.K. followed a similar path by attending camp from ages 10 to 14 and eventually becoming a junior counselor.

Fortier had once been a camper there too, only a long time ago, years before either girl—and at one point was the camp's program director. Even after stepping down from that role, he regularly returned for staff reunions and other social events. He met both girls, then in their mid-teens, while visiting the camp.

Fortier later reached out to them through Facebook. His online conversations with C.J. eventually turned sexual once she turned 16. Their relationship became physical too. They had "[f]our to five" sexual encounters over the next year-and-a-half-plus.

Fortier's "friendship" with S.K., then 15, later turned physical too after an evening she spent with C.J., then 17, at the Mall of America. C.J. shared a photograph on Snapchat of the two of them trying on shoes, which prompted Fortier, then 37, to invite the girls over after they were done. Once there, they drank, played darts partially nude, sat fully nude in Fortier's hot tub, and watched a movie. After the movie started, Fortier and C.J. left to have sex in his bedroom. Almost three hours later, Fortier had sex again, this time with S.K. He recorded both encounters on his iPhone.

After the girls reported what had happened, police officers arrived at Fortier's home with a search warrant. The officers found his recordings with C.J. and S.K., along with thousands of other suspicious files. The government charged him with two crimes: exploiting a minor for the purpose of producing child pornography, 18 U.S.C. § 2251(a), (e); and knowingly possessing child pornography, *id.* § 2252.

- 2 -

After a jury found him guilty, the district court[1] entered judgment and sentenced him on both counts.

## II.

Fortier begins with a sufficiency-of-the-evidence challenge to his conviction for exploiting a minor. He believes that the government failed to prove beyond a reasonable doubt that when he "use[d]" C.J. and S.K. "to engage in . . . sexually explicit conduct," he did so "*for the purpose* of producing" a "visual depiction." 18 U.S.C. § 2251(a) (emphasis added).

### A.

We begin with what the government had to prove. The statute contains a number of verbs that describe the actus reus of the offense, ranging from "employs" and "uses" to "persuades," "induces," "entices," and "coerces." 18 U.S.C. § 2251(a); *see also Ortiz-Graulau v. United States*, 756 F.3d 12, 19 (1st Cir. 2014) (discussing the various prohibited acts). To violate the statute, Fortier must have done one of those things in an effort to get C.J. and S.K. "to engage . . . in sexually explicit conduct." He does not dispute "us[ing]" them, nor could he. We have already held that filming minors engaged in sexually explicit conduct is one type of "use[]" under the statute, *see United States v. Stong*, 773 F.3d 920, 924–25 (8th Cir. 2014); *United States v. Vanhorn*, 740 F.3d 1166, 1168 (8th Cir. 2014), and here, Fortier admitted on the stand that he recorded his sexual encounters with them.

The sole dispute is over one of the statute's mens-rea requirements. The one at issue here is whether Fortier "use[d]" the girls with a particular "purpose" in mind: to "produc[e]" a "visual depiction of [the sexually explicit] conduct." 18 U.S.C. § 2251(a); *see United States v. Goodwin*, 719 F.3d 857, 862 (8th Cir. 2013)

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

(applying a similarly worded provision).  This mens-rea element, because it requires a mental state "above and beyond" the intent to perform one of the acts listed in the statute, is called a specific intent.  1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e), at 476–77 (3d ed. 2018); *United States v. Sterley*, 764 F.2d 530, 532 (8th Cir. 1985) (per curiam) ("Specific intent, as the term implies, means more than the general intent to commit the act.")

This specific-intent requirement was met if there was sufficient proof that one of Fortier's "dominant purposes" was to create a visual depiction of his sexual acts with the girls.  Final Jury Instr. No. 15, ECF No. 85; *see also United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009) (same).  If there was, then the government has satisfied its burden.  If the only evidence shows something different—like he recorded them on his iPhone by complete accident—then we must reverse Fortier's exploitation conviction.

## B.

So did the government meet its burden?  In reviewing a guilty verdict, "[w]e view the evidence in the light most favorable to the jury's verdict, drawing all reasonable inferences in favor of the verdict and reversing only where no reasonable jury could find all the elements beyond a reasonable doubt."  *United States v. Whitlow*, 815 F.3d 430, 435 (8th Cir. 2016) (internal quotation marks and citation omitted).  The government offered two categories of evidence.

The first is the other-recordings evidence.  In addition to the videos of C.J. and S.K., Fortier's collection of explicit videos and photographs contained many other "homemade" recordings.  This evidence allowed the jury to draw two inferences.  First, Fortier knew how to use his iPhone as a recording device, casting doubt on his claim that he accidentally pressed the wrong button.  Second, the videos of C.J. and S.K. were part of a larger collection, making it unlikely that his intent was anything other than "producing" a visual depiction.

- 4 -

The other is the content of the videos he made that night. They contain "extreme close-ups" of C.J.'s, S.K.'s, and Fortier's genitalia, with a focus on penetration. In one, Fortier instructs C.J. to change positions—possibly, as he suggests, for a more enjoyable experience, or maybe, as the government posits, for a better camera angle. The fact that the camera angles "matched" those of earlier recordings allowed the jury to draw the inference that the recordings themselves were no accident and that he was trying to perfect them for future viewing. *See United States v. Boyle*, 700 F.3d 1138, 1145 (8th Cir. 2012) (holding that "repeated adjustments of the camera" could show that the defendant intended to capture a "sexually explicit" image); *accord United States v. Torres*, 894 F.3d 305, 312 (D.C. Cir. 2018) (concluding that the presence of the perpetrator's hand in the photograph "manipulat[ing]" the minor's penis "so that the photo would accentuate it" supported a finding of purpose).

Despite this evidence, Fortier claims to have a perfectly innocent explanation: he prefers a certain amount of light during sex, and his iPhone flashlight gets it just right. He used the video app, he says, because it is the easiest way to turn the light on without his iPhone case getting in the way. As he put it, he can just "hit camera and then slide it to video," which "automatically" triggers the light.

Of course, there is a perfectly culpable explanation for Fortier's actions too: he pressed record because he wanted to record. Especially after doing it *four* times over the course of a single night. *Cf.* 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 302, at 241 (James H. Chadbourn rev. 1979) (discussing "the doctrine of chances—the instinctive recognition of that logical process which eliminates" innocent explanations upon seeing enough "instances of the same result"). Whether to accept the innocent or culpable explanation for his actions was a classic jury call. *See Whitlow*, 815 F.3d at 435.

III.

Fortier also raises three evidentiary issues. The first was allowing his ex-girlfriend, A.R., to testify that he recorded them having sex too. The second one, which also involved A.R., was her testimony that she was 17 years old and a high-school senior when they started dating. The third was the use of the terms "child erotica" and "age difficult" by an FBI task-force officer to describe some of the videos and photos in Fortier's collection. Only the first generated an objection at trial, and none entitle him to relief.

A.

We review the first challenge for an abuse of discretion. *United States v. Gilliam*, 934 F.3d 854, 860 (8th Cir. 2019). The testimony in question, which the district court treated as prior-acts evidence under Federal Rule of Evidence 404(b), consisted of A.R.'s statement that Fortier took explicit videos and photos of her while they were dating. She revealed that Fortier used his cell phone to capture these images, except when, without her knowledge, he would occasionally retrieve footage from surveillance cameras located around his house. In Fortier's view, A.R.'s testimony was inadmissible for three reasons.

The first is the most categorical: the testimony was inadmissible because it was relevant only for the prohibited purpose of showing that Fortier is a bad guy. *See* Fed. R. Evid. 404(b)(1) (prohibiting the admission of prior-acts evidence for this purpose). The government, however, offered it for an altogether different purpose. It served as a powerful antidote to Fortier's defense that he simply pushed the wrong button on his iPhone. A person who has successfully used a cell phone in the past to film explicit sexual acts appears less credible when he claims that the next time was only an accident. *Id.* 404(b)(2) (allowing evidence of prior acts to prove an "absence of mistake[] or lack of accident").

Fortier has a backup argument though. Even if the evidence was admissible for a permissible purpose, it was not "similar [enough] in kind" to what he did with C.J. and S.K. *United States v. Loveless*, 139 F.3d 587, 592 (8th Cir. 1998) (requiring that Rule 404(b) evidence be "similar in kind . . . to the crime charged"); *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* §§ 404.20[2][a], 404.22[1][a], at 404-44, -102 (Mark S. Brodin ed., Matthew Bender 2d ed. 2019). This argument is a reach. With all three, Fortier used a cell phone to record explicit footage. In fact, the footage "matched" in significant respects, including the use of the same filming "angle[s]." The only real difference is that C.J. and S.K. were minors and A.R. was not. But this fact has nothing to do with the "theory under which the evidence [was] offered": to prove that recording the two girls was no accident. 2 Weinstein & Berger, *supra* § 404.22[1][c], at 404-121.

Fortier's final theory of inadmissibility fares no better. He claims that the unfair prejudice he suffered from admission of the evidence "substantially outweighed" its probative value. Fed. R. Evid. 403. We have already discussed the evidence's strong probative value in rejecting Fortier's first argument. Whatever unfair prejudice he may have suffered did not substantially outweigh it. After all, the fact that A.R. was *not* a minor made her testimony *less* provocative and inflammatory than what Fortier's own testimony revealed about what he did with C.J. and S.K. *See United States v. Huyck*, 849 F.3d 432, 440 (8th Cir. 2017) (noting that Rule 403 protects against "evidence which is so inflammatory on its face as to divert the jury's attention from the material issues in the trial" (brackets and citation omitted)).

It is true, as Fortier claims, that A.R.'s statement that she was sometimes filmed without her knowledge could have turned some jurors against him. But the evidence showed that Fortier was the driving force behind the videos, going so far as to record some of his sexual encounters without consent in an effort to add to his collection. This too was relevant to debunking Fortier's recording-by-accident narrative. So under the circumstances, considering the fact that the district court offered limiting instructions on the other-recordings evidence, we cannot say that

the court abused its discretion in admitting it. *See United States v. Crow Eagle*, 705 F.3d 325, 328 (8th Cir. 2013) (explaining that offering "cautionary jury instructions" can be an indicator of "proper[] balanc[ing]" under Rule 403).

B.

The remaining two evidentiary issues are even more straightforward. Both involve Rule 403 balancing and are subject to plain-error review, which requires any error to be "clear or obvious," impact a defendant's "substantial rights," and "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc) (citation omitted). Neither of the issues that Fortier now raises for the first time clears these hurdles.

Fortier first argues that a different portion of A.R.'s testimony was inadmissible: the statement that she was just 17 years old and in high school when they began dating. He believes that the district court should have struck this part of her testimony sua sponte because it implied that he was "predatory" and had been dating teenage girls for a long time. The problem with this argument, however, is that he cannot point to any authority requiring a district court to exclude this information, much less strike it after it has been admitted. For this reason, any error was not plain. *See United States v. Solis*, 915 F.3d 1172, 1177 (8th Cir. 2019) (per curiam) ("Usually, for an error to be plain, it must be in contravention of [controlling] precedent." (citation omitted)).

The other issue is even more of a stretch. In describing Fortier's collection, Officer Dale Hanson placed the images and recordings into three categories: "child pornography," "child erotica," and "age difficult." The first category, "child pornography," was what Fortier was not allowed to have, whereas the other two are

not illegal to possess under federal law.[2]  Fortier objects to the use of the latter two labels in describing some of the items in his collection.

Had Officer Hanson falsely implied that Fortier used those labels himself in categorizing his own collection, then it arguably would have undermined his main defense to the possession charge: he did not know that he had the images.  *See* 18 U.S.C. § 2252(a)(4)(B) (requiring "knowing[] possess[ion]").  Or had he suggested that child erotica or age-difficult images were illegal, then it could have confused the jury about whether Fortier possessed other forbidden images too.  But Officer Hanson did neither of those things, so allowing him to use these terms in describing what he found was not erroneous, much less plainly so.  *See* Fed. R. Evid. 403.

IV.

Fortier's final challenge is foreclosed by precedent.  He argues that his conduct was beyond the reach of Congress to regulate under the Commerce Clause because every action he took was in Minnesota and neither he nor the images crossed state lines.  *See* U.S. Const. art. I, § 8, cl. 3; *United States v. Morrison*, 529 U.S. 598, 616–17 (2000).  It does not matter, however, because his iPhone was "mailed, shipped, or transported" in "interstate or foreign commerce" before he purchased it. 18 U.S.C. § 2251(a).  We have already held numerous times that this is enough, *see, e.g.*, *United States v. Betcher*, 534 F.3d 820, 824 (8th Cir. 2008), and we must do so again here, *see Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (explaining that we are bound by what prior panels have decided).

---

[2]To be classified as child pornography, a visual depiction must contain a minor engaged in "sexually explicit conduct."  *See* 18 U.S.C. § 2256(2), (8).  Officer Hanson explained that child erotica are images involving minors that do not quite meet the statutory definition of "sexually explicit conduct" and age-difficult images are those in which it is unclear whether the individual depicted is a minor.

## V.

We accordingly affirm the judgment of the district court.

_____