# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2562

_____

United States of America

*Plaintiff - Appellee*

v.

Bryan S. Reichel

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 19, 2018
Filed: December 28, 2018

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

Bryan Reichel appeals from his convictions for wire fraud, filing for bankruptcy for the purpose of executing a scheme to defraud, and making false statements in relation to bankruptcy proceedings. Upon careful consideration of the issues presented, we affirm the judgment of the district court.[1]

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

I

This case stems from Reichel's operation of PureChoice, Inc., a business that developed indoor air quality monitoring systems. Reichel founded PureChoice in 1992. During his tenure as president and CEO, Reichel obtained millions of dollars in bank loans for the company. PureChoice, having not yet turned a profit, was unable to pay back these loans. Reichel approached private investors, seeking and obtaining bridge loans, many of which he personally guaranteed. Reichel told the investors that PureChoice would use the money to restructure its debt and to fund its operations until it could reach profitability. What Reichel didn't tell the investors was that PureChoice was already in default on many of its bank loans, with collection actions threatened or pending against the company and himself—which is the type of information that PureChoice's lawyer urged him to disclose and that several investors indicated would have caused them to rethink their decisions to invest.

After obtaining bridge loans under false pretenses, Reichel did not attempt to pay them back until threatened with collection actions. Nor did he primarily use the loans to fund PureChoice operations, as he had promised. Instead, he paid off earlier loans, paid himself a large salary and bonuses, and occasionally instructed PureChoice employees to simply write him checks for tens of thousands of dollars in company funds. He did the same with the millions of dollars in stock sales that he collected from some of the same investors.

In 2010, Reichel was forced out of the company after an employee discovered that he had been stealing money. Soon after, one of PureChoice's investors, George Anderson, filed suit against Reichel to recover $1.5 million in unpaid loans. Reichel's stated defense was that payment on the loans was not due until May 2011. Anderson's counsel agreed to delay filing his summary judgment motion until May, giving Reichel an opportunity to pay off the debt. But on April 29, 2011, Reichel

filed for bankruptcy under Chapter 7, thus automatically staying Anderson's collection action.

During the course of the bankruptcy proceedings, the trustee discovered that Reichel had failed to disclose household goods worth at least $97,000, the sale of utility equipment, the transfer of $212,000 to an account in the name of "Reichel Investments, LP," and the fact that he was using the Reichel Investments account to pay his personal expenses. The trustee asked the bankruptcy court to deny discharge due to fraudulent activity. In 2012, Reichel waived his right to discharge.

In 2014, Reichel was indicted on seven counts of wire fraud in connection with the PureChoice investments, in violation of 18 U.S.C. § 1343. In 2015, the government filed a superseding indictment, which added five new counts related to Reichel's failed bankruptcy proceedings: one count of filing for bankruptcy for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. § 157; three counts of making a false statement in relation to bankruptcy proceedings, in violation of 18 U.S.C. § 152(3); and one count of concealing a tax refund that was bankruptcy estate property, in violation of 18 U.S.C. § 152(1).

A jury found Reichel guilty on all counts except the concealment of a tax refund. At sentencing, the district court applied multiple enhancements to Reichel's offense level, resulting in a Guidelines range of 262 to 327 months. It sentenced Reichel to 264 months of imprisonment. Reichel appeals, challenging several of the district court's decisions before and after trial and at sentencing.

II

Reichel first contends that the district court erred in denying his pretrial motion to sever the wire fraud counts from the bankruptcy-related counts. He argues that the counts were misjoined under Federal Rule of Criminal Procedure 8(a), which allows

for joinder of separate counts only where the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "The propriety of joinder is . . . determined from the face of the indictment." United States v. Massa, 740 F.2d 629, 644 (8th Cir. 1984), overruled on other grounds by United States v. Inadi, 475 U.S. 387 (1986). Rule 8(a) is "broadly construed in favor of joinder." United States v. Colhoff, 833 F.3d 980, 983 (8th Cir. 2016) (quoting United States v. McCarther, 596 F.3d 438, 441–42 (8th Cir. 2010)). We review allegations of misjoinder under Rule 8(a) de novo. United States v. Colbert, 828 F.3d 718, 728 (8th Cir. 2016).

Joinder was appropriate here because the offenses were all connected to a common scheme. The superseding indictment alleges a single "scheme to defraud and to obtain and retain money by means of materially false and fraudulent pretenses." And it goes on to allege facts supporting the conclusion that all of the charged offenses were connected to this single scheme: Reichel obtained money through wire fraud and tried to keep that money through bankruptcy fraud. Reichel was free to argue at trial that he had no such scheme, but the district court correctly looked to the allegations in the superseding indictment to determine that joinder was proper.

Reichel also argues that the district court abused its discretion when it refused to sever the counts for trial under Rule 14. Rule 14 allows for severance at trial if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). We review denial of severance under Rule 14 for an abuse of discretion and will reverse only upon a showing of severe prejudice, that is, if the defendant would have had "an appreciable chance for an acquittal" in a severed trial. United States v. Geddes, 844 F.3d 983, 988 (8th Cir. 2017) (quoting United States v. Scott, 732 F.3d 910, 916 (8th Cir. 2013)).

-4-

Here, the district court's decision to try the counts together was not an abuse of discretion. It concluded that evidence of wire fraud would be admissible as to the bankruptcy-related counts, and vice versa. "A defendant cannot show prejudice when evidence of the joined offense would be properly admissible in a separate trial for the other crime." Id. (cleaned up). We agree that evidence of the wire fraud would have been relevant to the § 157 count (filing for bankruptcy for the purpose of executing a scheme to defraud), and so it likely would have been admissible in a trial of the bankruptcy-related counts. It is less clear whether evidence of the bankruptcy fraud would have been admissible in a trial of the wire fraud counts, but even so, Reichel has not shown that he would have had "an appreciable chance for an acquittal" on any count had the trials been severed.

III

Reichel next contends that his convictions are not supported by sufficient evidence. When considering Reichel's challenge to the jury's verdict, "we review de novo the sufficiency of the evidence to sustain the conviction," viewing the evidence in the light most favorable to the jury's verdict, resolving all conflicts in favor of the verdict, and accepting all reasonable inferences that support the verdict. United States v. Whitlow, 815 F.3d 430, 435 (8th Cir. 2016). We will reverse "only where no reasonable jury could find all the elements beyond a reasonable doubt." Id. (quoting United States v. Cole, 721 F.3d 1016, 1021 (8th Cir. 2013)).

Reichel argues that the government failed to prove his fraudulent intent as to either the wire fraud or the bankruptcy counts.[2] He points to evidence from which,

---

[2] See 18 U.S.C. § 152(3) (requiring a false statement in relation to bankruptcy proceedings to be made "knowingly and fraudulently"); 18 U.S.C. § 157 (requiring a bankruptcy to be filed "for the purpose" of executing or concealing a scheme to defraud); United States v. Krug, 822 F.3d 994, 999 (8th Cir. 2016) (per curiam) ("Intent is an essential element of wire fraud [under 18 U.S.C. § 1343]." (cleaned up)).

he says, the jury could have inferred that he wanted PureChoice to succeed, that he merely made a series of bad business decisions concerning the bridge loans, and that his false statements concerning his bankruptcy proceedings were the result of confusion and misunderstanding. But "[e]ven where the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." United States v. Huyck, 849 F.3d 432, 441 (8th Cir. 2017) (quoting United States v. Griffith, 786 F.3d 1098, 1102 (8th Cir. 2015)). Here, a juror could have inferred that Reichel intended to deceive the investors from the evidence that Reichel convinced them to lend money to PureChoice, used some of that money for his own expenses, and failed to repay them according to the terms of the loan. See United States v. Walker, 818 F.3d 416, 421 (8th Cir. 2016) ("Intent to defraud need not be proved by direct evidence. Provided the victims suffered some tangible loss . . . the scheme itself often serves as evidence of a defendant's intent to defraud." (cleaned up)). Likewise, a juror could have inferred fraudulent intent concerning the bankruptcy from the evidence that Reichel filed for bankruptcy just before a creditor planned to file his summary judgment motion, then transferred funds to a hidden account, and finally failed to disclose that account and other items to the trustee. In light of all of the evidence presented, we cannot conclude that no reasonable jury could have found that Reichel possessed fraudulent intent sufficient to convict him of wire fraud and bankruptcy fraud.

IV

Reichel also contends that the district court erred in denying his post-trial motions to continue sentencing and dismiss the superseding indictment. Both motions were based on his theory that the original indictment should have been dismissed because it contained inaccurate information about PureChoice, and that as a result, it did not toll the statute of limitations on the wire fraud counts. Because the superseding indictment was not filed until after the limitations period, Reichel argued, the wire fraud counts must be dismissed. The district court denied Reichel's motions

as untimely. It reasoned that an affirmative defense based on the statute of limitations should have been brought in a pretrial motion if possible, and here, it would have been possible.

We review the district court's refusal to consider an untimely motion for abuse of discretion. See United States v. Trancheff, 633 F.3d 696, 697 (8th Cir. 2011) (per curiam). The district court has discretion to consider an untimely motion if the party shows good cause for the delay. Id.; Fed. R. Crim. P. 12(c)(3). "[G]ood cause . . . requires a showing of cause and prejudice." United States v. Paul, 885 F.3d 1099, 1104 (8th Cir. 2018) (cleaned up).

Here, we need not address whether Reichel could have raised his statute-of-limitations defense before trial, because he has not shown prejudice. Both of his motions hinge on his argument that the original indictment should have been dismissed due to inaccurate information allegedly presented to the grand jury. The inaccurate information concerned PureChoice's compliance with federal regulations. Reichel believes, based on the original indictment's allegations, that the grand jury was presented with testimony that PureChoice's products were required to comply with the regulations but did not comply, whereas in fact, at least some PureChoice products *did* comply. Reichel theorizes that the inaccurate compliance information would have led the grand jury to believe that PureChoice was a full-fledged Ponzi scheme rather than a legitimate business. But Reichel fails to articulate why the inaccurate compliance information was vital to the decision to indict, such that the grand jury would not have indicted without it. The petit jury, presented with a superseding indictment that did not contain the inaccurate compliance information, found Reichel guilty beyond a reasonable doubt on all wire fraud counts. Thus, we are confident that the grand jury could have indicted Reichel even without this inaccurate information, and thus that dismissal of the original indictment would have been improper. See United States v. Mechanik, 475 U.S. 66, 70 (1986) (holding that, despite an error in the grand jury proceeding, "the supervening jury verdict made

-7-

reversal of the conviction and dismissal of the indictment inappropriate."); see also Bank of N.S. v. United States, 487 U.S. 250, 255–56 (1988) ("[D]ismissal of the indictment is appropriate only if it is established that the [error] substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such [errors]." (cleaned up)). Because Reichel did not show that his motion to dismiss might have succeeded, the district court did not abuse its discretion in denying it or the motion to continue sentencing.[3]

V

At sentencing, the district court overruled Reichel's objection to three sentencing enhancements. Reichel appeals, arguing that these enhancements were erroneously applied given the facts and circumstances of his offenses. We review the district court's interpretation and application of the Guidelines de novo, and we review findings of fact for clear error. See United States v. Markert, 774 F.3d 922, 923 (8th Cir. 2014).

A

The first sentencing enhancement that Reichel challenges is a 22-level increase under § 2B1.1(b)(1)(L), which applies if the total loss amount exceeds $25 million. The Guidelines provide for several different methods of calculating the total loss

---

[3]During the pendency of his appeal, this court received two pro se motions concerning this issue from Reichel. We grant the first, a motion to supplement the record with additional documentation. The additional documents do not alter our analysis. We deny the second, a motion for the production of grand jury transcripts, because as discussed above, Reichel has not shown "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

amount. See USSG § 2B1.1 cmt. n.3. The district court used the actual loss, which is calculated as the pecuniary harm that Reichel "knew, or under the circumstances, reasonably should have known, was a potential result of the offense." Id. cmt. n.3(A)(iv). It found an actual loss of $28,290,114.31, comprising the wire fraud victims' losses and the assets that Reichel concealed from the bankruptcy court. Reichel argues that some of the investors' losses were due to market forces rather than Reichel's fraud, making it impossible to calculate actual loss. But Reichel misses the point: the investors would not have given *any* money to PureChoice were it not for Reichel's fraud, so all of the money invested and lost is properly included in the actual loss calculation. See Walker, 818 F.3d at 422–23.

Reichel also questions the district court's calculations, pointing out that the amount of restitution is about $6,000,000 less than the actual loss amount for Guidelines purposes. He theorizes that money returned prior to the discovery of the fraud was credited to the restitution calculation but not to the Guidelines calculation. But the district court explained that the discrepancy was due to an unindicted co-conspirator's losses, which were included in the Guidelines calculation but not included in the restitution calculation. Because the loss amount determination under the Guidelines and for restitution purposes are distinct inquiries, the district court did not err by including the unindicted co-conspirator's losses in one, but not the other. See United States v. Binkholder, 832 F.3d 923, 929 (8th Cir. 2016). The district court made a "reasonable estimate of the loss," which is all that the Guidelines require. USSG § 2B1.1 cmt. n.3(C) ("The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference.").

B

Next, Reichel challenges a two-level enhancement under § 2B1.1(b)(10)(C) for offenses involving "sophisticated means" that defendants intentionally engage in or

cause. Sophisticated means represents "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Id. cmt. n.9(B). Whether an offense involves sophisticated means is a factual finding that we review for clear error. United States v. Meadows, 866 F.3d 913, 917 (8th Cir. 2017). Here, the district court did not clearly err. Reichel's bankruptcy fraud involved sophisticated means. See § 2B1.1 cmt. n.9(B) (listing "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities" as an example of sophisticated means). And Reichel's multi-year use of bridge loans from one investor to cover the debts of another constituted sophisticated means for the wire fraud counts. See Meadows, 866 F.3d at 917–18.

C

Finally, Reichel challenges a two-level enhancement under § 3B1.3 for abusing "a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." This enhancement "is not intended to apply to every fraud offense," Walker, 818 F.3d at 423, but the district court properly applied it here. Reichel repeatedly used his position as the president and CEO of PureChoice, in addition to his status as one of two long-term board members, to perpetrate and conceal his fraud. This is the type of conduct contemplated by this Guideline provision. See § 3B1.3 cmt. n.1 (listing "a bank executive's fraudulent loan scheme" as an example of an offense warranting the enhancement); Walker, 818 F.3d at 423 (holding that it was not clear error to apply the enhancement where the defendant "repeatedly used his controlling corporate trust position to conceal his massive fraud offenses").

VI

Based on the foregoing, we affirm.

_____

-10-