# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1182

_____

United States of America

*Plaintiff - Appellee*

v.

Booker Deon McKinney

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 13, 2025
Filed: June 5, 2025
[Published]

_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.

_____

PER CURIAM.

Booker Deon McKinney pleaded guilty to possession of ammunition as an unlawful drug user in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). After McKinney moved unsuccessfully to withdraw his guilty plea and dismiss his

indictment, the district court[1] sentenced him to 120 months in prison, followed by three years of supervised release. McKinney appeals, and we affirm.

## I.

In January 2023, McKinney was indicted for possessing 28 rounds of ammunition "[o]n or about April 17, 2021" while being an unlawful marijuana user. He pleaded guilty on June 7, 2023. Seven months later, in January 2024, McKinney filed a motion to withdraw his plea and dismiss his indictment, on the grounds that § 922(g)(3) violated the Second Amendment. The district court denied the motion.

McKinney was sentenced on January 26, 2024. At sentencing, John O'Brien, an officer with the Cedar Rapids, Iowa, Police Department, testified that on April 17, 2021, police pulled over a vehicle occupied by McKinney and a juvenile named B.R. In the vehicle, officers found a ghost gun[2] with a loaded, 30-round magazine. B.R. was charged with possession of the firearm, but McKinney's DNA was also found on the gun. O'Brien later interviewed McKinney, who admitted that "he had handled the firearm," "[p]robably within a day or two, if not th[e] evening" of the stop. McKinney said that the ghost gun had an extended magazine and was heavy when he handled it, which indicated to O'Brien that the gun had been loaded. O'Brien added that B.R. claimed in an interview that McKinney threw the gun onto B.R.'s lap as officers pulled them over.

O'Brien also testified to two other incidents. First, in October 2021, Cedar Rapids police stopped a car in which McKinney was a passenger, and a gun was thrown from the vehicle during pursuit. McKinney denied throwing the gun. Second, in September 2022, officers responded to a shots-fired call at McKinney's parents'

_____

[1]The Honorable C.J. Williams, then District Judge, now Chief Judge, United States District Court for the Northern District of Iowa.

[2]A "ghost gun" is a "privately made firearm." See Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022).

residence in Cedar Rapids, where officers found shell casings on the porch. McKinney denied firing the gun used in the shooting, but admitted he had handled it and believed his DNA would be found on it.

ATF Special Agent Robert Friend also testified at sentencing. Friend explained that during another investigation, officers learned that a woman named B.E. was purchasing firearms for McKinney. B.E. bought twelve firearms between September 2020 and October 2021. When purchasing the guns, B.E. "misrepresented her use of controlled substances" and misrepresented her address "on several forms." B.E. also reported numerous firearms stolen—a tactic, according to Friend, "common for people who are straw purchasing firearms for others." In a search of B.E.'s residence in November 2021, officers found "receipts [for firearms] . . . some drug paraphernalia . . . marijuana," and McKinney's ID card. In the course of investigating B.E.'s firearm purchases, officers did not interview B.E. but did obtain data from her cellphone, with her permission.

B.E. ultimately testified before the grand jury in McKinney's case. However, B.E. did not testify at the sentencing hearing because, according to Friend, the government was unable to locate her.[3] Instead, the court admitted at sentencing various hearsay statements by B.E.: her grand jury testimony; text messages she exchanged with McKinney; and testimony from Friend about Instagram messages he observed on B.E.'s phone.

B.E. testified to the grand jury that "[p]robably all but like two" of the twelve firearms she purchased were for McKinney. And the contents of her phone showed the following. In February 2021, B.E. and McKinney exchanged photographs of guns that B.E. purchased around that time. In April 2021, McKinney requested that B.E. get a specific firearm, which she purchased on April 20. On May 18, McKinney

---

[3]Friend testified that, in anticipation of sentencing, agents went to B.E.'s residence several times, called her, and reached out to her lawyer, but none of these efforts proved successful.

asked her to "take me get this blick rq,"[4] and B.E. purchased a gun that day. Several images on B.E.'s phone also showed McKinney holding firearms. Photographs of B.E.'s phone display showed tens of unanswered calls and messages containing threats from McKinney related to a dispute involving their son, and Instagram messages between her and McKinney discussed a firearm purchase in October 2021, which receipts corroborated.

The district court calculated a base offense level of 22, finding that McKinney committed his § 922(g)(3) offense after sustaining a conviction for a crime of violence. See USSG § 2K2.1(a)(3). The district court then applied two 4-level enhancements: one for the number of firearms McKinney possessed, and the other for possessing a firearm in connection with another felony offense. See USSG § 2K2.1(b)(1)(B), (b)(6)(B). McKinney's total offense level was 27 and his criminal history category was VI, resulting in an advisory Guidelines range of 130 to 162 months' imprisonment, reduced to the statutory maximum sentence of 120 months. See USSG Ch.5, Pt.A. The district court sentenced McKinney to 120 months. See 18 U.S.C. § 924(a)(2).

McKinney appeals.

II.

A.

McKinney first argues that the district court erred in denying his motion to withdraw his guilty plea and dismiss the indictment. "[A] defendant [may] withdraw a court-accepted guilty plea before sentencing if 'the defendant can show a fair and just reason for requesting the withdrawal,'" United States v. Seys, 27 F.4th 606, 610 (8th Cir. 2022) (quoting Fed. R. Crim. P. 11(d)(2)(B)), and a court may consider an untimely motion to dismiss an indictment upon a showing of good cause, Fed. R.

---

[4]Friend testified that "blick" is slang for a gun.

Crim. P. 12(c)(3), which "requires a showing of cause and prejudice," United States v. Reichel, 911 F.3d 910, 916 (8th Cir. 2018) (quoting United States v. Paul, 885 F.3d 1099, 1104 (8th Cir. 2018)). We review for abuse of discretion. Seys, 27 F.4th at 610 (withdrawal of guilty plea); Reichel, 911 F.3d at 916 (decision to consider untimely motion to dismiss).

In his motion, McKinney sought to challenge his indictment under the test announced in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). Similarly, on appeal, the only justification McKinney provides for reversing the decision below is that, were his plea withdrawn, McKinney could argue that § 922(g)(3) violates the Second Amendment facially or as applied to marijuana users.[5] But as the district court pointed out, between the time of McKinney's guilty plea and his motion to withdraw and dismiss, neither Supreme Court nor Eighth Circuit precedent changed respecting § 922(g)(3)'s constitutionality. There was thus no intervening change in the law that might have provided cause for McKinney's belated request to withdraw his plea and challenge his indictment. See United States v. Mays, 593 F.3d 603, 607 (7th Cir. 2010) ("There is some authority for the proposition that a post-guilty plea, pre-sentence change in Supreme Court precedent . . . may constitute a fair and just reason for permitting the withdrawal of the plea."). Moreover, McKinney never counters the district court's findings that his requests came "inordinately late,"[6] he did not claim innocence, and he did not contest that his

---

[5]Our court has since upheld § 922(g)(3) against a facial Second Amendment challenge, see United States v. Veasley, 98 F.4th 906, 918 (8th Cir. 2024), and we have acknowledged that applying § 922(g)(3) to marijuana users is constitutional in at least some applications, see United States v. Cooper, 127 F.4th 1092, 1096 (8th Cir. 2025).

[6]The deadline for pretrial motions in McKinney's case was March 21, 2023, and McKinney pleaded guilty in June 2023, making his January 2024 motion to withdraw and dismiss the indictment many months late. See Fed. R. Crim. P. 12(b)(3) (noting that a defendant must object to "a defect in the indictment or information" via pretrial motion, "if the basis for the motion is then reasonably available and . . . can be determined without a trial on the merits").

plea was knowing and voluntary. See United States v. Smith, 422 F.3d 715, 723 (8th Cir. 2005) (noting that in deciding whether a defendant may withdraw a plea, the district court "consider[s] whether the defendant has asserted his innocence to the charge, the length of time between the plea of guilty and the motion to withdraw, and whether the government will be prejudiced by the withdrawal" (quoting United States v. Austin, 413 F.3d 856, 857 (8th Cir. 2005) (per curiam))); see also United States v. Boone, 869 F.2d 1089, 1092 (8th Cir. 1989) (upholding rejection of withdrawal motion where defendant "did not assert his legal innocence and . . . waited two months before seeking to withdraw"). The district court did not abuse its discretion in denying McKinney's motion.

B.

Next, McKinney argues that the district court erred at sentencing by starting with too high a base offense level; relying on inadmissible hearsay evidence; and improperly weighing the § 3553(a) factors. We address each in turn.

1.

McKinney first argues that the district court miscalculated his base offense level. The Guidelines impose a base offense level of 22 if the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine" and "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." USSG § 2K2.1(a)(3). Citing McKinney's May 2022 conviction for Iowa Domestic Abuse–Strangulation, the district court calculated McKinney's base offense level as 22 under § 2K2.1(a)(3). See United States v. Parrow, 844 F.3d 801, 802–03 (8th Cir. 2016) (per curiam) (concluding Iowa Domestic Abuse–Strangulation is a crime of violence). "We review the district court's construction and application of the Guidelines de novo and its factual findings for clear error, 'keeping in mind that the Government must prove by a preponderance of the evidence each of the facts necessary to establish a

sentencing enhancement.'" United States v. Campos, 79 F.4th 903, 908 (8th Cir. 2023) (quoting United States v. Guzman, 926 F.3d 991, 1000 (8th Cir. 2019)).

McKinney claims that § 2K2.1(a)(3) does not apply because his 2022 Iowa conviction postdated the conduct for which he pleaded guilty: possession of ammunition "[o]n or about April 17, 2021" as an unlawful drug user. But for sentencing purposes, McKinney's "offense" included "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2); see also USSG §§ 1B1.1, comment. (n.1(I)); id. comment. (n.5(A)); 3D1.2(d). The district court found that McKinney continued his offense conduct "well past the date of conviction [on his state charge] in May of 2022." For example, McKinney admitted to law enforcement that he continued to use marijuana through February 2023 and had handled a firearm involved in a shooting at his parents' house in September 2022. The district court did not clearly err in applying § 2K2.1(a)(3) to calculate the base offense level. See United States v. Soto, 62 F.4th 430, 434–35 (8th Cir. 2023) (noting "the district court is given broad discretion to assess the relevant facts" in applying the course of conduct test in § 1B1.3(a)(2) (quoting United States v. Montoya, 952 F.2d 226, 229 (8th Cir. 1991))).

2.

Next, McKinney argues that the district court erred in relying on hearsay statements from B.E. and B.R. at sentencing. "At sentencing, the district court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, including hearsay and double hearsay evidence, provided that the information has 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Harris, 44 F.4th 819, 822 (8th Cir. 2022) (quoting USSG § 6A1.3(a)). The district court's assessment of reliability "turns on 'factors such as the consistency of the hearsay testimony, the timing and nature of the declarant's statements, and the witness's impressions of the declarant's demeanor, as well as other corroborating evidence.'" Id. at 823 (quoting United

States v. Sheridan, 859 F.3d 579, 583 (8th Cir. 2017)). We review the district court's decision to consider hearsay statements at sentencing for abuse of discretion. United States v. Wailes, 44 F.4th 823, 827–28 (8th Cir. 2022).

Under USSG § 2K2.1(b)(6)(B), a 4-level enhancement applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." Here, the district court found that McKinney possessed a ghost gun on April 17, 2021, while violating an Iowa law prohibiting "knowingly carr[ying] or transport[ing] in a vehicle a pistol or revolver." Iowa Code § 724.4(1) (2021). The district court relied in part on B.R.'s statement to law enforcement that McKinney threw the ghost gun onto his lap when officers stopped the vehicle. McKinney argues that this statement was unreliable because B.R. pleaded guilty to possessing the same ghost gun, and falsely implicated McKinney in a robbery. But B.R.'s statement was corroborated: McKinney admitted to handling the ghost gun; McKinney's own DNA was found on the gun; and McKinney pleaded guilty to possessing the ghost gun's ammunition "[o]n or about April 17, 2021." The district court did not clearly err in crediting the juvenile's statement.

Another 4-level enhancement applies if the defendant's offense involved "8–24" firearms. USSG § 2K2.1(b)(1)(B). The district court relied on hearsay evidence from B.E., including her grand jury testimony that "[p]robably all but like two" of the twelve firearms she purchased were for McKinney. McKinney argues this statement was unreliable due to inconsistencies in B.E.'s testimony, as well as her arguable motive to inculpate McKinney over child custody disputes, domestic violence, and her own legal troubles. However, in addition to B.E.'s testimony under oath, see United States v. Morin, 437 F.3d 777, 781 (8th Cir. 2006) (noting that grand jury testimony "has indicia of reliability because it was given under oath and subject to the penalties of perjury"), other evidence—which McKinney does not challenge on appeal—corroborates her account: photographs of McKinney with firearms; messages arranging firearm purchases; McKinney's own admission to handling firearms; and McKinney's presence in a vehicle from which a firearm was thrown during a police pursuit. The district court did not abuse its discretion in finding B.E.'s

grand jury testimony was sufficiently corroborated, and thus, reliable. See United States v. Wallace, 408 F.3d 1046, 1048 (8th Cir. 2005) (per curiam) (upholding district court's consideration of grand jury testimony at sentencing where photographic and other evidence corroborated the testimony); United States v. Knife, 9 F.3d 705, 706–07 (8th Cir. 1993) (finding no abuse of discretion in admitting hearsay statements at sentencing because they were corroborated by other, non-hearsay evidence).

3.

Finally, McKinney claims that his sentence is substantively unreasonable. "We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard." United States v. Anderson, 90 F.4th 1226, 1227 (8th Cir. 2024) (quoting United States v. Burns, 834 F.3d 887, 890 (8th Cir. 2016)). A district court enjoys "wide latitude in weighing relevant factors" under § 3553(a), "including discretion to assign more weight to the offense's nature and circumstances than to the defendant's 'mitigating personal characteristics.'" Id. (quoting United States v. Frenchone One Horn, 62 F.4th 461, 463 (8th Cir. 2023)). "Where, as here, the sentence imposed is within the advisory guideline range, we accord it a presumption of reasonableness." United States v. Bauer, 626 F.3d 1004, 1010 (8th Cir. 2010).

McKinney argues that the district court placed too much weight on the fact that McKinney possessed several guns, as well as guns' negative impact on the community, while not sufficiently weighing various mitigating circumstances, including McKinney's difficult upbringing, the fact that he is a father, and that he has been the victim of traumatizing gun violence. But the district court did not err in pointing to the danger guns pose to the community. See 18 U.S.C. § 3553(a)(1) (requiring courts to consider "the *nature* and circumstances of the offense" (emphasis added)). And the district court acknowledged the mitigating factors McKinney raises. The court recognized that McKinney had been shot multiple times, resulting in symptoms of post-traumatic stress disorder, but also that his personal history lacked abuse, poverty, or "any great" disadvantage. Indeed, the district court

noted McKinney "had good parents" and a "role model" for a father. The district court also found "troubling" that McKinney had earned a criminal history category of VI by the young age of 24, and noted that McKinney had used marijuana since at least 16 years old and lacked meaningful employment as an adult. To the court, McKinney was "doing anything but slowing down," and "[i]nstead of maturing as he g[ot] older and realizing he ha[d] responsibilities and getting a job . . . [he was] becoming more and more violent." And the district court cited McKinney's "attitude . . . toward the law" as further evidence he presented "a danger to the community." Ultimately, the district court considered the § 3553(a) factors, and while it disagreed with McKinney's preferred weighing, such disagreement "alone does not justify reversal." United States v. Carnes, 22 F.4th 743, 751 (8th Cir. 2022) (quoting United States v. Brown, 992 F.3d 665, 674 (8th Cir. 2021)).

III.

We affirm.

_____

-10-